## 20176

The STATE, Respondent, v. Frank MIDDLETON, Appellant.

(222 S. E. (2d) 763)

*Messrs. Coming B. Gibbs, Jr.,* and *Mark C. Tanenbaum,* of *Gibbs, Gaillard, Rowell & Tanenbaum,* Charleston, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Joseph R. Barker, Asst. Atty. Gen.,* of Columbia, and *Robert B. Wallace, Sol.,* and *A. Arthur Rosenblum, Asst. Sol.,* of Charleston, *for Respondent,*

*Messrs. Coming B. Gibbs, Jr.,* and *Mark C. Tanenbaum,* of *Gibbs, Gaillard, Rowell & Tanenbaum,* Charleston, *for Appellant, in Reply.*

February 26, 1976.

RHODES, Justice:

Frank Middleton appeals from his conviction of rape and armed robbery. He contends that he should be granted a new trial because of alleged trial errors. We disagree and affirm his conviction.

The following five questions are raised for our consideration:

1. Did the trial judge err in refusing to ask jurors during their *voir dire* examination five questions submitted by Middleton relating to whether they would presume that Middleton was innocent when so instructed by the trial judge?

2. Did the trial judge err in refusing to ask jurors during their *voir dire* examination three questions submitted by Middleton relating to racial prejudice?

3. Did the trial judge err by admitting into evidence articles of clothing belonging to Middleton and obtained during a search of his bedroom conducted without a search warrant but with the permission of his father?

4. Did the trial judge err in allowing testimony that Middleton had refused to submit to a combing of his pubic hair?

5. Did the trial judge err in refusing to exclude certain materials sent to the F.B.I. Laboratory in Washington, D. C. on the grounds that no chain of custody for the materials had been established?

## QUESTIONS 1 and 2

Middleton contends that the trial judge's refusal to ask jurors eight questions submitted by him violated S. C. Code § 38-202 (1962) and his federal constitutional rights. Middleton was a 27 year old black male charged with raping the 16 year old daughter of a white Charleston City police lieutenant, and the armed robbery of the Magnolia Drive-In Theater. The victim, an employee of the Magnolia, was used as a hostage during the robbery, and was forced at gunpoint to accompany the robber as he fled from the Magnolia, the rape occurring shortly thereafter. He was tried in Charleston County four months after the crimes were committed.

Middleton alleges error in the failure of the trial judge to ask the jury on *voir dire* examination certain questions requested by him relating to the presumption of innocence and possible racial prejudice. While the jurors were not asked the precise questions requested by Middleton, they were asked, in addition to the basic questions required by S. C. Code § 38-202 (1962),

nine questions as set forth in the footnote below.[1] There is no question but that the basic questions required by the above cited statute were asked the jurors. Generally, any further examination of the jury is left to the sound discretion of the trial judge. *State v. Britt*, 237 S. C. 293, 117 S. E. (2d) 379 (1960). The trial judge, in his charge to the jury, fully instructed them as to the presumption of innocence accorded the defendant and the burden of proof imposed upon the State, and it is presumed that the jury followed his instructions. *State v. Queen*, 264 S. C. 515, 216 S. E. (2d) 182 (1975). We are unaware of any controlling constitutional requirement that questions relative to the presumption of innocence be asked jurors on *voir dire* examination. Thus the matter was within the sound discretion of the trial judge and we find no abuse of same.

The second group of *voir dire questions* not asked in the language requested by Middleton related to possible racial prejudice. While the case of *Ham v. South Carolina*, 409 U. S. 524, 93 S. Ct. 848, 35 L. Ed. (2d) 46 (1973), holds that the Fourteenth Amendment requires that *voir dire* questions relating to possible racial prejudice be asked in cases of the nature here presented, that opinion vests the trial judge with considerable latitude as to the manner by

---

[1] The following additional questions were asked by the trial judge:
"1. What is your educational background? How far did you go in school?
"2. Have you ever served on a jury before?
"3. Would you listen to all of the evidence before reaching a verdict?
"4. Will you give careful attention to the testimony of every witness without regard to race, color, creed or sex?
"5. Do you have any friends or relatives who are police officers?
"6. The fact that a white woman has been raped, coupled with the fact that the man charged with the rape is black, would that make it difficult for you to be impartial and totally fair?
"7. Have you or any member of your family or close personal acquaintances ever been a victim of a sexual assault?
"8. Is there anything about the nature of the charges of rape and armed robbery which make it difficult for you to sit as a juror?
"9. Do you know any reason why you think you should not serve as a juror on the trial of this case?"

which the objective is achieved. In *Ham,* the Supreme Court of the United States stated the following:

"We agree with the dissenting justices in the Supreme Court of South Carolina that the trial judge was not required to put the question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner."

We are of the opinion that questions four and six[2] asked by the trial judge were patently sufficient to comply with the requirements of the Fourteenth Amendment relative to possible racial prejudice.

We conclude, therefore, that there was no error when the trial judge did not ask on *voir dire* the eight questions submitted by Middleton.

## QUESTION 3

During the trial, an evidentiary hearing was held on the question of whether a pair of green pants and black tennis shoes should be admitted into evidence. These articles of clothing belonged to Middleton and were obtained during a search of his bedroom two days after the robbery and rape. At the time of the search Middleton was in jail. The search took place on a Monday afternoon and was conducted by three police officers after Middleton's father had signed a consent to search form. The trial judge allowed the articles into evidence, and they were identified by the cashier at the Magnolia as having been worn by the person who robbed him.

Middleton contends that the pants and shoes should have been excluded under the Fourth Amendment of the U. S. Constitution because his father's consent was ineffective and not voluntary.

The subject of third party consent was recently discussed in *United States v. Matlock,* 415 U. S. 164, 94 S. Ct. 988, 39 L. Ed. (2d) 242 (1974). In *Mat-*

---

[2] See n. 1 *supra.*

*lock,* the test devised for determining whether a third party had sufficient status to consent to a search was whether the third party possessed common authority over or had some other sufficient relationship to the premises or effects searched. The prosecution has the burden of satisfying this test. *United States v. Matlock, supra.*

In the instant case, the showing by the State was uncontradicted and consisted of the testimony of the police officer in charge of the search. The record shows that Middleton, unmarried, lived in an apartment provided and also occupied by his parents. He shared a bedroom with a younger brother.

We upheld the right of a parent to consent to a search of a son's bedroom where the son was living in the parent's home in *State v. Miller,* 260 S. C. 1, 193 S. E. (2d) 802 (1972). We think Middleton's father had sufficient status under the test in *Matlock* to effectively consent to the search of Middleton's bedroom. Common authority is clearly established from the fact that Middleton's father both provided and also occupied the apartment in which Middleton lived.

The voluntariness of his father's consent is also clearly established. Whether a consent was voluntary is determined from an examination of the surrounding circumstances and the burden is on the prosecution to show voluntariness. *Schneckloth v. Bustamonte,* 412 U. S. 218, 93 S. Ct. 2041, 36 L. Ed. (2d) 854 (1973). Again, the showing by the State was uncontradicted that the father voluntarily signed a consent to search form after having same read to him, and the record is devoid of any evidence that the father's consent was other than voluntary.

We conclude, therefore, that there was no error on the part of the trial judge in admitting the pants and shoes into evidence.

## QUESTION 4

Shortly after the police were notified of the rape and robbery, Middleton was taken to the police station for questioning. After the *Miranda* warnings were given to him, he was asked to submit to a combing of his pubic area. The object of the request was to obtain a sample of Middleton's pubic hair and any alien hairs. He initially agreed to comb his pubic hair but when subsequently told by the police that he was not charged with any crime and did not have to submit to a combing, he withdrew his consent. No combing of the pubic area was ever accomplished by the police. Middleton was then released but was charged with the rape and robbery twelve days later. At the trial, a police officer was allowed to testify, over objections by Middleton's counsel, that Middleton had refused to submit to a combing of his pubic area.

Middleton contends that the admission into evidence of his refusal to submit to the combing had a chilling effect on his Fourth Amendment rights and deprived him of fundamental fairness in violation of due process. This argument is based on an analogy to the Fifth Amendment principle that forbids the use of a defendant's exercise of his privilege against self-incrimination against him at trial. *Miranda v. Arizona,* 384 U. S. 436 (n. 37), 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966).

While a law review article has suggested that the Fifth Amendment analogy would require exclusion of the testimony concerning the refusal, we have found no controlling decision warranting this conclusion. See Dann, *The Fifth Amendment Privilege Against Self-Incrimination: Extorting Physical Evidence from a Suspect,* 1970 So. Calif. L. Rev. 597, 627 (1970). The only decision we have found involving similar facts held there was no Fourth or Fifth Amendment violation. *Commonwealth v. Mitchell,* Mass., 326 N. E. (2d) 6 (1975).

The State takes the position that the only remedy for a violation of the Fourth Amendment is exclusion of the tainted evidence, and since no search or seizure was in-volved in the instant case, the Fourth is inapplicable. It also contends that no Fourth Amendment objection was raised below. It further argues that there is no violation of the Fifth Amendment under the authority of our decisions in *State v. Smith,* 230 S. C. 164, 94 S. E. (2d) 886 (1956), and *State v. Miller,* 257 S. C. 213, 185 S. E. (2d) 359 (1971). Middleton asserts that if the Fifth Amendment is involved, *United States v. Hale,* 422 U. S. 171, 95 S. Ct. 2133, 45 L. Ed (2d) 99 (1975), is controlling.

We first deal with the State's contention that no Fourth Amendment objection was raised below. The record shows that this objection was made after the evidentiary hearing, but before the jury heard the testimony concerning Middleton's refusal to submit to a combing of his pubic area. Although the objection was not specifically ruled on by the trial judge, we think it was sufficiently raised for our review. However, we agree with the State that the Fourth Amendment is not applicable because no search or seizure occurred.

In *United States v. Hale, supra,* Hale argued that the trial court committed reversible error when it allowed the prosecution to elicit from him an admission that he had not explained to the police the presence of $158 found on him at the time of his arrest. The United States Supreme Court agreed with Hale, and held that the probative value of Hale's pretrial silence was outweighed by the prejudicial impact of admitting it into evidence. The Court expressly refused to consider any constitutional grounds as a basis for its deci-sion. We are not controlled or persuaded by the reasoning used in Hale.

We are of the opinion that Middleton's Fifth Amendment rights were not violated by the admission of testimony that he refused to submit to a combing of his pubic hair. In *State*

*v. Miller, supra,* this Court held that the admission of testimony that the defendant refused to submit to a breathalyzer test did not violate the defendant's privilege against self-incrimination and reaffirmed our decision in *State v. Smith, supra.* These decisions are controlling in the instant case with respect to alleged Fifth Amendment violations.

We conclude, therefore, that there was no error in the admission of testimony concerning Middleton's refusal to submit to a combing of his pubic hair.

## QUESTION 5

At the trial, the State presented an expert witness to testify as to the results of certain tests conducted at the F.B.I. Laboratory in Washington, D. C. on pubic hair combings from the rape victim and debris from clothing belonging to the victim and Middleton. At the proper time, counsel for Middleton objected to the testimony on the ground that no chain of custody had been established for the tested materials between the time they were received at the F.B.I. Laboratory and given to the witness for examination. The State offered evidence to establish the necessary chain of custody and no further objections were made until the materials were offered into evidence. At this point, the record is unclear whether the tested materials were being objected to or some other items offered into evidence at the same time. Of course, if the objection was not to the tested materials, we could not consider any error as to their admission into evidence. *State v. McCrary,* 242 S. C. 506, 131 S. E. (2d) 687 (1963). Even assuming an objection was made, the record clearly shows that the objection was not preserved when the expert witness was cross-examined on the same subject matter. Therefore, any error in the admission of the materials was waived. *State v. Quillien,* 263 S. C. 87, 207 S. E. (2d) 814 (1974).

We conclude, therefore, that error, if any, in the admission of the materials sent to the F.B.I. Laboratory was waived by Middleton.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.