[No. F004477. Fifth Dist. Mar. 25. 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY EUGENE THOMAS. Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court. rules 976(b) and 976.1. this opinion is certified for publication with the exception of parts I. II. III. V. VII. VIII. IX and X.

## COUNSEL

Alan M. Caplan, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, W. Scott Thorpe and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HAMLIN, J.**—Defendant Rodney Eugene Thomas appeals from a judgment upon jury convictions of three counts of oral copulation (Pen. Code, § 288a, subd. (c));[1] two counts of rape (§ 261, subd. (2)); two counts of sodomy (§ 286, subd. (c)); and one count of false imprisonment (§ 236). The trial court sentenced defendant to prison for seven consecutive eight-year upper terms for the sex crimes plus one consecutive three-year upper term for the false imprisonment.

Defendant raises many issues on appeal which we will discuss seriatim after summarizing the facts.

At about 9 p.m. on December 19, 1983, Priscilla P. put her one-year-old son to bed and lay down on the couch in her home in Wasco, California, to watch television. She fell asleep there. Later that night she was awakened by defendant's hands strangling her. She screamed and tried to break away. Her son woke up crying. Priscilla stopped screaming after defendant threatened to kill her and her son.

Defendant then held Priscilla's neck in the crotch of his arm. He pushed her onto her back, sat on her chest, and told her he had come to rob the house but had "found something better." Defendant ordered Priscilla to "suck on him." Out of fear, she complied. Defendant then commanded her

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

to engage in "69" (he orally copulates her vagina while she orally copulates his penis).

After this stopped, defendant told Priscilla to get on her knees and lean against a chair. He then attempted to insert his penis into her anus. She said it hurt; the pain lasted several days. Defendant then engaged in normal sexual intercourse with Priscilla.

Defendant permitted Priscilla to go to the bathroom. Thereafter, he took her to her bedroom, and engaged in another "69," normal sexual intercourse, and sodomy. During this period he asked her if she knew anyone by the name of "Spider." She replied, "No."[2]

Finally, at about 4 a.m., defendant fell asleep with his arm around her chest. Paralyzed with fear, Priscilla did not try to flee. At around 6 a.m. she awoke defendant, telling him he had better leave. Defendant told her he had still not gotten what he came for.

Priscilla managed to run into the kitchen and grab some knives before going into her son's room to protect him. Defendant came out of the bedroom and threw brandy at her. She told him to leave and that if he came any closer, she would kill him.

At this point, defendant started begging her not to hurt him, saying he was sorry, and repeatedly asking her not to call the police. She only screamed for him to leave. He finally left by the back door and she immediately locked it.

After defendant left, Priscilla telephoned friends Jaime Guevara and Mary and Clint Tillman.

On the way to Priscilla's home, the Tillmans spotted defendant, known to them as "Spider," a few blocks from her home. When they arrived at Priscilla's, she was terrified and hysterical; the living room was in complete disarray. After Priscilla described her attacker and what he was wearing, the Tillmans realized it was "Spider." Since the Tillmans knew where "Spider" resided, they showed the police "Spider's" residence after the police arrived and were informed of the events that had transpired.

When Officer Acencion Barrera spotted someone who matched the description of Priscilla's assailant, he pursued the suspect but was unable to apprehend him.

---

[2]Priscilla could see that the attacker was a Black man wearing a blue knit hat, a dark-colored shirt, jeans and Nike shoes. Defendant had also mentioned that his name was "Eugene."

Later, Officer Barrera joined Officer Michael Lackey, and they went to the residence Clint Tillman had shown Lackey as "Spider's" residence. Defendant's mother permitted them to enter that residence. Clothing matching that described by Priscilla as worn by her attacker was on a couch and chair in the living room. Defendant was found crouched in a corner of a bedroom hiding beneath a large quantity of clothing.

Defendant was arrested and brought to the Wasco substation where physical evidence (his clothing) could be collected. After defendant heard officers discussing how to package the clothing to avoid contamination, defendant managed to pull the clothing on the floor and stomp on it until he was subdued.[3]

Sometime later that morning, defendant escaped out the back door of the substation but was promptly reapprehended.

Vaginal swabs taken from Priscilla were consistent with defendant's body fluids. Pubic hair identical to defendant's was found in Priscilla's bed. Similarly, pubic hair matching that of Priscilla's was found in a combing of defendant's pubic hair at the time of his arrest.

### Defense

Defendant's defense was consent. He testified that he first met Priscilla on the evening in question while he was walking the streets at 7 p.m., smoking a marijuana cigarette. She was standing on the sidewalk and asked for some "hits [on] my joint," so he shared it with her. She invited him to her house to smoke some of her marijuana, and he accepted her invitation.

After they smoked Priscilla's marijuana at her house, she told him she was lonely and wanted to make love. Defendant thought he might be able to get some money out of her, so he consented.

Defendant said that each of their sexual acts which followed (oral copulation, "69," intercourse and sodomy) was initiated by her. At no time was any physical force used. Defendant said he attempted only one sodomy and that he abandoned it because she complained of pain.

### Discussion

### I.-III.*

. . . . . . . . . . . . . . . . . . . . . . .

[3]Defendant contended he jumped on the clothes because he was angry.

*See footnote. *ante*, page 47.

## IV.

### Privilege Against Self-incrimination

■ The trial court ordered defendant to provide the People hair (pubic and head), saliva and blood samples. Defendant argues that this order violated his Fifth Amendment privilege against self-incrimination because there is no specific case law allowing the nonconsensual removal of pubic or head hair. We disagree.

In *Schmerber* v. *California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826] blood was drawn from a suspected drunk driver over his objection. The Supreme Court set forth a balancing test of weighing the individual's privacy and bodily integrity interests against the community's interest in fairly and accurately determining guilt or innocence. The court held that the evidence was properly obtained and admissible because the intrusion was minimal, society's interest was significant, and there were exigent circumstances in obtaining the evidence before it dissipated. Recently, in *Winston* v. *Lee* (1985) 470 U.S. 753, 761 [84 L.Ed.2d 662, 669, 105 S.Ct. 1611, 1617], the court pointed out that: "A crucial factor in analyzing the magnitude of the intrusion in *Schmerber* is the extent to which the procedure may threaten the safety or health of the individual."

The California Supreme Court in *People* v. *Collie* (1981) 30 Cal.3d 43, 55, footnote 7 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776], stated: "Although we refrain from establishing discovery rules related to testimonial evidence, we leave intact the firmly established precedents that hold the self-incrimination privilege inapplicable to, and allow mandatory production of, nontestimonial evidence such as fingerprints, blood samples, breath samples, appearances in lineups, and handwriting and voice exemplars."

Several courts outside of California have ruled that the taking of hair samples does not amount to a violation of the Fifth Amendment privilege against self-incrimination. (*State* v. *White* (Mo. 1981) 621 S.W.2d 287 [hair samples]; *Perez* v. *State* (Okla.Crim.App. 1980) 614 P.2d 1112 [saliva and hair samples]; *State* v. *McCumber* (Utah 1980) 622 P.2d 353 [hair samples]; *State* v. *Middleton* (1976) 266 S.C. 251 [222 S.E.2d 763], vacated 429 U.S. 807 [50 L.Ed.2d 69, 97 S.Ct. 44], reaffirmed on remand (1977) 268 S.C. 152 [232 S.E.2d 342] [pubic hair].) The mandatory production of saliva and hair samples is reasonable because the taking of those samples involves virtually no risk, trauma, or pain. Moreover, these samples constitute nontestimonial evidence not protected by the Fifth Amendment privilege against self-incrimination. (See, generally, *People* v. *Collie, supra,* 30 Cal.3d at

p. 55, fn. 7.) Thus, the trial court did not err in granting the People's motion.

### V.*

*Prosecutorial Misconduct*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### VI.

*Sodomy Conviction*

██ Defendant alleges there was insufficient evidence of anal penetration to uphold either of his sodomy convictions. Defendant states that Priscilla's own testimony reflected her uncertainty as to any penetration. Moreover, there was no evidence of any trauma to her anus nor was there any presence of semen.

██ In *People* v. *Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255] the court, after having initially stated that "[e]vidence, to be 'substantial' must be 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value'" (*id.*, at p. 576), went on to point out: "[T]he appellate court 'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.] The court does not, however, limit its review to the evidence favorable to the respondent. . . . 'First, we must resolve the issue in the light of the *whole record* . . . . Second, we must judge whether the evidence of each of the essential elements . . . is *substantial;* it is not enough for the respondent simply to point to "some" evidence supporting the finding, for "Not every surface conflict of evidence remains substantial in the light of other facts."'" (*Id.*, at pp. 576-577.) *Johnson* relied upon *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781] to the effect that an appellate court does not "'. . . "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation omitted in original.] Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution. *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People* v. *Johnson, supra,* at p. 576.)

---

*See footnote. *ante*, page 47.

This court may not reject statements believed by the trier of fact unless there exists either a physical impossibility they are true, or their falsity is apparent without resorting to inferences or deductions. (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267].)

■■■ Section 287 provides: "Any sexual penetration, however slight, is sufficient to complete the crime of sodomy." In addition, CALJIC No. 10.52 (4th ed. 1979)[5] provides that evidence of emission is not necessary. In *People* v. *Gonzalez* (1983) 141 Cal.App.3d 786 [190 Cal.Rptr. 554] the court found that the victim's testimony that the defendant "tried to enter a little bit, but it hurt a lot" supported a finding of slight penetration and, when combined with circumstantial evidence of rectal pain and bleeding, was sufficient to sustain the sodomy conviction. (*Id.*, at p. 790.)

Cognizant of these principles, we turn to examine the record. Priscilla testified about the first sodomy, which occurred in the living room, as follows:

"Q. [Deputy District Attorney] Then were you touched somewhere?

"A. [Priscilla] Yes.

"Q. Where?

"A. On the anus.

"Q. And could you tell what touched you? What it was that touched you?

"A. His penis.

"Q. What exactly did you feel?

"A. A lot of pain.

"Q. Was this in your anus or somewhere else?

"A. In the anus.

"Q. Could you tell whether or not anything went inside, actually inside your anus?

"A. I couldn't, it just hurt so bad, I don't know.

[5]Further CALJIC references are to the fourth edition (1979) unless otherwise indicated.

"Q. How many times did this occur in the living room? That is with the anus?

"A. The one time."

With regard to the second sodomy, which occurred in the bedroom, Priscilla testified:

"Q. [Deputy District Attorney] During the time that you were in the bedroom, was there any contact at all made with your anus?

"A. [Priscilla] Yes.

"Q. In the bedroom?

"A. Yes.

"Q. And when that happened were you still on the bed or somewhere else?

"A. Still on the bed.

"Q. Had you changed your position on the bed at all?

"A. I was on my stomach.

"Q. How did you get that way?

"A. He told me to.

"Q. When you got on your stomach what did he do?

"A. He tried to enter my anus with his penis.

"Q. Did you feel any pressure or anything there?

"A. It hurt again, I kept telling him it hurt and he telling me to relax.

"Q. He told you to relax?

"A. Yes."

Priscilla also testified that as a result of both sodomies she experienced pain in her anus for several days thereafter. Although denying he ever pen-

etrated her anus, defendant admitted getting his penis once "between her buttocks" and trying to sodomize her, but he allegedly stopped when she complained of pain. As in *Gonzalez,* such evidence is sufficient to uphold the sodomy conviction.

VII.-X.*

. . . . . . . . . . . . . . . . . . . . . . . . .

We affirm the judgment.

Franson, Acting P. J., and Woolpert, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 25, 1986.

*See footnote *ante,* page 47.