Filed 8/1/24  P. v. Miller CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B327879 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA501400) |
| v. | |
| ANTHONY JOSEPH MILLER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed with directions.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield and Stefanie Yee, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Anthony Joseph Miller (defendant) was convicted of rape, sodomy, oral copulation, and dissuading a witness from reporting a crime.  On appeal, he argues that three of his convictions are not supported by sufficient evidence, that he was unconstitutionally shackled during trial, and that the trial court erred in running his full sentences consecutively.  Defendant's arguments lack merit, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

On a Monday afternoon in September 2018, defendant drove up alongside Jane Doe as she walked toward a bus stop.  Doe had just finished her shift as a topless dancer at a bar in El Monte, California.  Seeing her visible tattoos, defendant lied and told her he was looking for a receptionist at a tattoo parlor he operated in nearby Arcadia, California.  When Doe considered the job offer, defendant offered to drive her to the parlor.  She accepted, and got into his car.

Defendant did not drive Doe to the nonexistent parlor.  Instead, he drove to a car dealership, and after pretending to negotiate to buy *Doe* a car, drove her to his house in Pasadena, California.  As defendant neared his house, defendant told Doe that he had a knife in his glove compartment; at this point, Doe was "borderline terrified."

2

Afraid defendant might get angry if she objected or resisted, and mindful that defendant was substantially larger than her, Doe followed defendant into his house. Once inside, defendant insisted Doe "check out" his bedroom; at this point, Doe was "really, really scared."

Defendant told Doe to remove her clothes. Although Doe told defendant she wanted to go home, she ultimately complied with defendant's directives because she was afraid defendant might kill her.

Defendant put his penis into Doe's vagina.

Defendant then tried to "force" his penis into Doe's anus, and "penetrated her . . . anally." Doe's anus still hurt hours later, ranking a "6" in pain on a "1-to-10 scale."

Defendant then put his penis into Doe's vagina a second time.

Defendant instructed Doe to give him oral sex, and she put her mouth on his penis.

Defendant then instructed Doe to kiss, touch, and lick his "nuts."

As this was happening, Doe repeatedly told defendant "no" and that she wanted to go home, but she continued with the acts because she was afraid of defendant. When Doe tried to pull away from defendant, he became aggressive, told her he "ha[d] to get a nut" (that is, to ejaculate), and he ultimately ejaculated on Doe's face.

After ejaculating, defendant permitted Doe to get dressed and ordered her to get into his car with him. When Doe told him that she wanted to go home, defendant yelled at her and told her that he was taking Doe to meet someone from his gang, the El Monte Flores gang, to "get dealt with."

3

Fearing that defendant meant to have her killed, Doe jumped out of his car when he stopped at a red light near the Arcadia police station.  While Doe was in the police station, defendant sent her text messages and accused her of wrongfully "cry[ing] rape" and "threaten[ing]" *him*.

## II.    Procedural Background

The People charged defendant, as to Doe,[1] with (1) two counts of forcible rape (Pen. Code, § 261, subd. (a)(2)),[2] one for each time he penetrated her vagina; (2) sodomy by use of force (§ 286, subd. (c)(2)(A)); (3) two counts of forcible oral copulation (§ 287, subd. (c)(2)(A); former § 288a, subd. (c)(2)(A)[3]), one for his penis and another for his scrotum; and (4) dissuading a witness (§ 136.1, subd. (b)(1)).

The trial court bifurcated the proceedings.

During the guilt phase, the People on rebuttal introduced evidence that in 2011, defendant walked up alongside a 19-year-old woman, offered her a job at his tattoo shop, and when she accepted his offer of a ride in his car, took her to a motel and raped her.

The jury found defendant guilty of all charges regarding Doe.

In the second phase, the jury then made findings pertinent to sentencing.  Specifically, the jury (1) found that defendant's

---

[1]    The People alleged charges with respect to three other victims, but the jury acquitted defendant of those charges.

[2]    All further statutory references are to the Penal Code unless otherwise indicated.

[3]    The abstract of judgment incorrectly lists the former statute and must be corrected.

4

1997 conviction for burglary constituted a "strike" within our "Three Strikes" law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)); and (2) found two aggravating circumstances—namely, that (a) defendant's crimes were committed in a way that required planning, sophistication, and professionalism, and (b) defendant had engaged in violent conduct indicating a serious danger to society.

The trial court sentenced defendant to 64 years in state prison. Specifically, the court imposed 16 year sentences (comprised of a high-end base term of eight years, doubled due to the prior "strike") for the two rape convictions, the sodomy conviction, and one of the two oral copulation convictions; the court imposed a 16-year sentence on the other oral copulation conviction and a six-year sentence on the witness dissuasion conviction, but ran them concurrently to one another and to the other four sentences.

Defendant filed this timely appeal.

## DISCUSSION

## I. Substantial Evidence Challenges

Defendant argues that his sodomy conviction, one of his oral copulation convictions, and the witness dissuasion conviction are not supported by the evidence. In evaluating these claims, our task is limited: We ask only whether the record as a whole ""'discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a *reasonable trier of fact* could find the [pertinent element(s)] beyond a reasonable doubt.'"" (*People v. Ghobrial* (2018) 5 Cal.5th 250, 277.) In undertaking this inquiry, we may not reweigh evidence; instead, we must view the evidence in the light most favorable to the jury's verdict, and resolve all conflicting inferences and

credibility findings in favor of those verdicts. (*In re Caden C.* (2021) 11 Cal.5th 614, 640; *People v. Casares* (2016) 62 Cal.4th 808, 823, overruled on other grounds by *People v. Dalton* (2019) 7 Cal.5th 166; *People v. Reed* (2018) 4 Cal.5th 989, 1016.) We review any subsidiary questions of statutory interpretation de novo. (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 652.)

### A.   *Sodomy conviction*

Under the pertinent criminal statute, "sodomy" is defined as "sexual conduct consisting of contact between the penis of one person and the anus of another person." (§ 286, subd. (a).) Sodomy requires "penetration, however slight." (*Id.*; CALCRIM No. 1030.)

The evidence of penetration at defendant's trial cut both ways.

On the one hand, the parties stipulated that Doe, during a forensic sexual assault examination, reported that (1) defendant "penetrated her . . . anally"; and (2) she was experiencing pain in her anus that ranked a "6" on a "1-to-10 scale." The examiner also noted tenderness on the anal verge. On the other hand, Doe's testimony at trial was more equivocal. On direct examination, she testified that defendant "tried to put [his penis] in [her] butt—[her] anus" and that he "tried to force it into it." When asked, "Did it actually go in?" Doe responded, "Not that—I don't think so, no." When asked if it hurt, Doe responded, "Yes."

Defendant urges that there was insufficient evidence that his penis penetrated Doe's anus. We disagree.

Substantial evidence supports the jury's finding of penetration. Doe told the forensic examiner that defendant had "penetrated her . . . anally." Although Doe's testimony at trial

was more equivocal on the point of penetration, her testimony at most created an inconsistency in Doe's accounts of whether there had been penetration—and we must defer to the jury's resolution of that inconsistency. (*People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"]; *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 878 ["[i]t is for the trier of fact to consider internal inconsistencies in testimony"], overruled on other grounds by *Ryan v. Rosenfeld* (2017) 3 Cal.5th 124.) Doe also consistently reported that she experienced significant pain in her anus. And the forensic examiner found tenderness in the "anal verge," and penetration to the anal verge constitutes sodomy. (*People v. Paz* (2017) 10 Cal.App.5th 1023, 1032-1034, 1038 (*Paz*).) Taken together, Doe's testimony that she had been penetrated, the pain she experienced, and the objective evidence of tenderness are sufficient to establish penetration. Other cases have upheld jury findings of penetration on substantially similar facts. (*People v. Gonzalez* (1983) 141 Cal.App.3d 786, 789-790 (*Gonzalez*) [victim testified to "a lot of pain," that defendant "tried to enter," and that victim "wouldn't let him"; substantial evidence of penetration], overruled on other grounds by *People v. Kurtzman* (1988) 46 Cal.3d 322; *People v. Thomas* (1986) 180 Cal.App.3d 47, 55-56 [victim testified to "a lot of pain," but could not "tell whether or not anything went inside [her] anus"; substantial evidence of penetration]; *People v. Martinez* (1986) 188 Cal.App.3d 19, 25-26 [same].)

Defendant resists this conclusion with five arguments.

First, he argues that Doe's statements during the forensic examination should be discarded because they were not made under oath, were not subject to cross-examination, and were

"subjective in nature." Because Doe's statements during the examination were nevertheless admitted for their truth, defendant is essentially asking us to give those statements less weight than Doe's trial testimony. However, we are not permitted to reweigh the evidence when we engage in substantial evidence review.

Second, defendant argues that other cases have upheld jury findings of anal penetration based on more evidence. (E.g., *People v. Farnam* (2002) 28 Cal.4th 107, 143-144 [sperm recovered in victim's anus]; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 88 [same]; *People v. Castaneda* (2011) 51 Cal.4th 1292, 1323 [sperm and feces found together on sock].) This is true, but irrelevant because none of these cases purported to set the minimum quantum of evidence necessary for a finding of penetration.

Third, defendant argues that Doe's testimony alone is insufficient to establish penetration and that corroborative evidence is required. Defendant is wrong on the law. "In California, . . . conviction of a sex crime may be sustained upon the uncorroborated testimony of the [victim]." (*Gonzalez, supra*, 141 Cal.App.3d at p. 790, citing *Ballard v. Superior Court* (1966) 64 Cal.2d 159, 171, superseded by statute on other grounds by *People v. Haskett* (1982) 30 Cal.3d 841.)

Fourth, defendant argues that Doe's testimony was too vague on the issue of penetration. Although "prosecutors must elicit precise and specific testimony to prove the required penetration beyond a reasonable doubt" (*Paz, supra*, 10 Cal.App.5th at p. 1038), this principle is designed to avoid findings resting on "vague, euphemistic language" (*ibid.*). Here, Doe told the forensic examiner that she had been penetrated

8

anally and that she was still experiencing significant pain, and there was evidence of bruising. This evidence is sufficiently precise and specific.

Fifth and lastly, defendant argues that the prosecutor misstated the evidence regarding penetration during closing argument. This argument is both inaccurate and irrelevant: It is inaccurate because the prosecutor did not misstate the evidence, and it is irrelevant because it has nothing to do with the sufficiency of the evidence.[4]

## B.  *Oral copulation conviction*

Defendant does not contest the sufficiency of the evidence that he forced Doe to put his penis in her mouth or that he forced her to put his scrotum in her mouth. Instead, defendant argues that these two acts constituted a single, indivisible crime that can only form the basis for a single conviction.

As pertinent here, the crime of oral copulation prohibits "the act of copulating the mouth of one person with the sexual organ . . . of another person." (§ 287, subd. (a); CALCRIM No. 1015.) The "sexual organ[s]" of a male include the penis, the scrotum, and the testicles. (*People v. Catelli* (1991) 227 Cal.App.3d 1434, 1448-1449 (*Catelli*).) A defendant is guilty of "separate sex crimes"—and hence eligible for conviction for separate counts of oral copulation—if the defendant uses force to compel the victim to perform "nonconsensual sex acts of an

---

4      To the extent defendant's purported prosecutorial misconduct claim alleges a due process violation, he has forfeited it by failing to ""'make a timely objection and ask the trial court to admonish the jury,'"" as there is no indication a timely objection would have been inadequate. (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 480.)

identical nature" as long as there is some "[]interrupt[ion]" between those acts—even if those acts are part of a "single encounter" and "follow one another in quick, uninterrupted succession." (*Id.* at pp. 1446-1447.) "Interruptions" include having multiple victims "change" sexual positions (*id.* at p. 1446) and engaging in a new use of "force or violence" (*People v. Deloach* (1989) 207 Cal.App.3d 323, 338; see also *People v. Garza* (2003) 107 Cal.App.4th 1081, 1091-1093 [additional threats between sex acts provide a basis for cumulative punishment, which presupposes separate criminal convictions]; *People v. Pena* (1992) 7 Cal.App.4th 1294, 1316 [same]). The reason for this is straightforward: By having the victim engage in a sex act in a different position or after a new threat, the defendant manifests an "independent intent and objective to degrade the victim[] and to further enhance the physical pain, emotional suffering and humiliation they experienced from his repeated violations of their person[]." (*Catelli*, at p. 1447.)

Substantial evidence supports a finding that defendant's conduct in forcing Doe to put his penis in her mouth and then forcing her to put his scrotum in her mouth were interrupted by his directive—backed up by his threat of harm—to kiss, touch, and lick his "nuts." Defendant's threat-backed directive also subjected Doe to further degradation and humiliation.

Defendant resists this conclusion with what boils down to three arguments.

First, he argues that the facts of *Catelli* are distinguishable. He is right. In *Catelli*, the court held that the defendant could be guilty of four counts of oral copulation after he ordered two victims—one of whom was copulating his penis and the other of whom was copulating his scrotum—to "switch

10

positions." (*Id.* at pp. 1438-1439, 1446.) But *Catelli* did not purport to limit the definition of "interruption" to cases in which the victims "switch positions." *Catelli* instead reaffirmed the general rule that sex acts separated by interruptions may be separately prosecuted.

Second, defendant argues *Catelli*'s holding that the scrotum and penis are part of the male "sex organ" means that a defendant can be prosecuted only once per organ. This argument misreads *Catelli* itself, which upheld separate convictions for each victim's copulation of defendant's penis and scrotum.

Third and lastly, defendant argues that affirming his two convictions in this case will lead to the absurd result of "massive overcharging" because "every lick of different areas of the same sexual organ would be considered a separate and distinct violation." Defendant's worries are overstated. What makes the sex acts in this case separate crimes is the interruption between them—namely, defendant's additional threat-back directive; absent such an interruption, a victim's sua sponte movement to a different part of a sexual organ or a different sexual organ would not give rise to a separate crime.

### C.    *Witness dissuasion conviction*

A defendant is guilty of the crime of dissuading a witness only if he specifically intended to prevent them from reporting the crime. (§ 136.1, subds. (b)(1) & (c)(1); *People v. Ford* (1983) 145 Cal.App.3d 985, 990; *People v. Lyons* (1991) 235 Cal.App.3d 1456, 1461.)

Defendant argues that there was insufficient evidence of his specific intent to prevent Doe from reporting the sex crimes. We disagree. While defendant drove Doe away from his house after the sex acts, he told her that he was taking her to meet

someone from his street gang "to get dealt with." Threats may be implied (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1344 (*Mendoza*), superseded on other grounds by § 422), and a jury could reasonably infer that defendant's mention of his gang membership along with the ominous promise that he was taking Doe to meet a fellow gang member who would "deal[]" with her after she asked to be brought home was a threat for her to remain in defendant's good graces and not report what he had done to her.

Defendant resists this conclusion with four arguments.

First, he argues that his words to Doe were merely "grandiose, outrageous statements clearly uttered in anger" and in response to Doe "harping" about wanting to go home. At bottom, defendant is asking us to look at his words differently than the jury reasonably did. But we are not allowed to reweigh the evidence.

Second, defendant argues that he never *explicitly* said something like, "If you report any of this, I will hurt you." However, as noted above, such explicit threats are not necessary. (*Mendoza, supra*, 59 Cal.App.4th at p. 1344.)

Third, defendant argues that Doe had already reported the crime at the time she and defendant exchanged text messages. That is true, but irrelevant to our analysis because we are focusing on defendant's words and conduct prior to Doe's frantic escape from defendant's car and subsequent flight to the police station. And the fact that a victim has already reported a crime is not a defense to dissuasion in any event. (E.g., *People v. Morones* (2023) 95 Cal.App.5th 721, 736 [the statute does not only "appl[y] to prohibited conduct that takes place before a witness or victim makes an initial report"]; *People v. Pettie* (2017)

16 Cal.App.5th 23, 54-55 [same]; see generally *People v. Moses* (2020) 10 Cal.5th 893, 902 ["the general rule is that factual impossibility is not a defense to attempt"].)

Fourth and finally, defendant argues that the prosecutor misstated the evidence in her closing argument. As noted above, the prosecutor did not misstate the evidence and this is irrelevant to a sufficiency of the evidence challenge.

## II.    Shackling

### A.    *Pertinent facts*

On the first day of jury selection, defendant—who was in a wheelchair—reported that he had been wheeled past the venire of 72 prospective jurors down the hallway outside the courtroom, which was the only artery between the lock-up elevator and the courtroom. To avoid this happening again, the trial court ordered the bailiffs to have defendant brought to the courtroom an hour earlier every day, when no one would be in the hallway. A few days later, defendant complained that he was not provided with a razor to shave and that the bailiffs "rolled [him] right in front of [the prospective jurors] just like this." Two days after that, defendant made a reference to having been "chained up" in front of prospective jurors on the first day of trial. Defendant wore a wristband given to him by jail officials. The wheelchair's back had been stamped with "L.A. County."

At no point did defendant object that he was required to wear shackles in front of the jury during trial.

### B.    *Analysis*

Defendant argues that his constitutional rights were violated because he was forced to wear shackles in front of the jury during trial.

13

Trial courts have "'"'broad power to maintain courtroom security and orderly proceedings,'"'" but may order a defendant to be physically restrained "'"'in the jury's presence'"'" only if there is a "'"'manifest need for such restraints.'"'" (*People v. Bracamontes* (2022) 12 Cal.5th 977, 990-991 (*Bracamontes*).) A manifest need exists if the defendant poses a risk of "'violence, escape, or disruption'" of the proceedings through "nonconforming courtroom behavior." (*Id.* at p. 992.) A trial court's finding must be based on its own, independent, "individualized assessment" of the need for restraints. (*Id.* at p. 992.) A defendant's rights are not violated "simply because the defendant 'was seen in shackles for only a brief period either inside or outside the courtroom by one or more jurors or venire[persons].'" (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 584; *People v. Duran* (1976) 16 Cal.3d 282, 287, fn. 2; *People v. Jacobs* (1989) 210 Cal.App.3d 1135, 1141.) We review a trial court's assessment of manifest need for an abuse of discretion. (*Bracamontes*, at pp. 990-991.)

We conclude that there was no error here for three reasons.

First, defendant did not object below to being shackled, and his failure to object constitutes a forfeiture. (*Bracamontes*, *supra*, 12 Cal.5th at p. 993.)

Second, defendant has not carried his burden—as the appellant—of showing that he was shackled except once or twice when being transported down the hallway to the courtroom. (*People v. Moore* (2021) 68 Cal.App.5th 856, 866 [defendant bears burden of affirmatively showing error below].) The record is silent as to any indication that defendant was visibly shackled during the trial. At most, the record is ambiguous on this point. Yet "'any uncertainty in the record must be resolved *against* the defendant'" (*People v. Chubbuck* (2019) 43 Cal.App.5th 1, 12,

14

emphasis added), and thus he has not sustained his initial burden.  As a result, the trial court did not err in not telling the jury to disregard defendant's custodial status.  (*People v. Lopez* (2013) 56 Cal.4th 1028, 1080 ["In the absence of evidence the jury saw defendant's restraints, the court had no duty to instruct"], overruled on other grounds by *People v. Rangel* (2016) 62 Cal.4th 1192.)

Third, the trial court would have had an ample basis to order defendant restrained.  On defendant's first day in court, he told the deputies that he was "not coming back," which prompted the trial court to issue a conditional extraction order.  Defendant repeatedly displayed disruptive, nonconforming behavior during the trial—directly speaking to the prosecutor.  What is more, he became "more and more disruptive" as the trial went on, requiring the court to exclude defendant during closing arguments.  Defendant informed the bailiff that he would attack his own counsel if the jury returned a verdict against him.

Defendant urges that he was further denied a fair trial because he was required to wear prison garb during trial, forced to use a wheelchair stamped with "L.A. County," and required to wear a bracelet issued to him by jail officials.  Although forcing a defendant to wear prison garb is not allowed (*People v. Bradford* (1997) 15 Cal.4th 1229, 1335-1336), the record does not support his contention that he was wearing prison garb; to the contrary, witnesses who identified defendant in court repeatedly referenced him wearing street clothes.  The trial court ordered the stamped portion of the wheelchair to be inverted so the jury could not see it.  And there is no evidence in the record that the jury associated defendant's bracelet with being in custody.  (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1214 [no violation if jury did not know

15

that "purpose" of restraint was to "restrain defendant" or indicated his custodial status], overruled on other grounds by *People v. Diaz* (2015) 60 Cal.4th 1176.)

### III. Sentencing

Defendant argues that the trial court erred in imposing the two rape convictions, the sodomy conviction, and one of the oral copulation convictions consecutively at their full terms.

As a general matter, a trial court running two sentences consecutively must select one sentence as the "principal term" and select another as the "subordinate term"; the sentence for the subordinate term must be one-third of the middle term of any sentencing triad for the underlying crime and any enhancements. (§ 1170.1, subd. (a).) However, for certain qualifying sex offenses—which include rape, sodomy, and forcible oral copulation—a court may impose sentences consecutively for their *full* terms. (§ 667.6, subds. (c) & (e).) Before it may do so, however, the trial court must indicate on the record that it is "making a separate and additional" sentencing decision. (*People v. Belmontes* (1983) 34 Cal.3d 335, 348.)

Defendant argues that the trial court erred in not giving reasons for running the four sentences consecutively, and hence did not acknowledge that it was making a separate sentencing choice.

Defendant is wrong. Even if we ignore that defendant forfeited this issue by not asking the trial court to state reasons (*People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100-1101),[5] the trial court *did* acknowledge on the record that section 667.6

---

[5] Because we sidestep the forfeiture, defendant's ineffective assistance of counsel argument based on their failure to object becomes irrelevant.

16

allowed it to run full-term sentences consecutively, and then offered several reasons for doing so—namely, (1) defendant expressed no "remorse or concern for the victims" and instead continued to insist that "he did not commit the crimes," (2) the jury found two aggravating factors, and (3) the balance of aggravating and mitigating factors warranted a longer sentence.

## DISPOSITION

The judgment is affirmed. The trial court is ordered to modify the abstract of judgment as follows: The convictions of section 288a, subdivision (c)(2)(A), on counts 2 and 5, shall be corrected to reflect convictions of section 287, subdivision (c)(2)(A). The trial court is further ordered to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST


17