The STATE of Ohio, Appellant,

v.

WILLIAMS et al., Appellees.

[Cite as *State v. Williams* (1995), 101 Ohio App.3d 340.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16858.

Decided Feb. 22, 1995.

*Philip Bogdanoff*, Assistant Summit County Prosecuting Attorney, for appellant.

*Barry M. Ward*, for appellee Andre Williams.

*Annette L. Powers*, for appellee Jevon G. Williams.

---

QUILLIN, Judge.

The state of Ohio appeals the granting of defendants Andre and Jevon Williams's motion to suppress. We affirm.

Andre and Jevon are brothers and live in the home of their aunt, Carolyn Williams. They share a bedroom in the basement of the home and pay their aunt $150 per month rent.

In February 1994, Officer Butler responded to a report of a robbery in the area of the Williams's home. The victim told Butler that three armed men stole his Starter jacket. The victim told Butler that he did not know the men by name, but that he knew where one of the men lived. The victim then directed Butler to the Williams's residence. There, Butler questioned Carolyn Williams and learned that her nephews lived there. Carolyn Williams allowed Butler and at least one other officer to enter the house. At Butler's request, Carolyn called Andre, Jevon and another man up from their room in the basement. Butler briefly questioned them regarding the incident and instructed them that he would be taking them outside. The defendants then went back downstairs to get their shoes and put on warmer· clothes. As they did so Butler followed. Andre testified that he objected to the officer's presence: "I told several police officers that those quarters was my—they were my quarters and I told them that they did not have a search warrant so get out of there." Carolyn also testified that she heard the defendants object to a search of their room. Butler did not conduct a search at that time, but merely observed them getting ready to go outside.

Then, one at a time, Butler took each of them out onto the front porch for the victim to identify. After the victim identified them as his assailants, the three were arrested and placed in separate squad cars. Butler then asked Carolyn for permission to search the house. Although the defendants had indicated that they opposed a warrantless search of their bedroom, Carolyn consented. Butler found a Starter jacket and two guns concealed in the drop ceiling above the bed in the basement bedroom.

The defendants moved to suppress the evidence, claiming that the search was invalid because they had denied consent to the search and Butler had not obtained a search warrant. The motion was assigned to a magistrate and, after a

hearing, the magistrate granted the motion. The state objected to the magistrate's order. The trial court overruled the objection and affirmed the magistrate's order. The state appeals, arguing that, based on *Illinois v. Rodriguez* (1990), 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148, the trial court erred in suppressing the evidence because Butler acted in good faith and reasonably believed that Carolyn had authority to consent to the search of her home.

In *United States v. Matlock* (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242, the court held that a third party with common authority over the premises can consent to a search. The court discussed what constitutes "common authority":

"Common authority is * * * not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, see *Chapman v. United States*, 365 U.S. 610, [81 S.Ct. 776, 5 L.Ed.2d 828] (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California*, 376 U.S. 483, [84 S.Ct. 889, 11 L.Ed.2d 856] (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 250, fn. 7.

That rule was extended in *Rodriguez*. In holding that a warrantless entry is valid if the police have obtained the consent of a third party whom the police reasonably, though incorrectly, believe to possess common authority over the premises, the court stated:

"[I]n order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable." *Rodriguez*, 497 U.S. at 185, 110 S.Ct. at 2800, 111 L.Ed.2d at 159.

In that case, the police had gained entry to the defendant's apartment through a woman who claimed to share it with the defendant. While in the apartment the police saw illegal drugs in plain view and arrested the defendant. Although the state failed to satisfy its burden of proving that the woman had had the actual authority to let the police into the apartment, the court held that the police's belief that she had the authority was reasonable because she had told the officers

that she shared the apartment and that she had clothes and furniture there and because she let the officers in with a key.

The state contends that *Rodriguez* should apply to validate the search of defendants' bedroom because the officer had a reasonable, good faith belief that he had obtained valid consent from Carolyn Williams. Butler testified that he believed that Carolyn Williams had common authority over the basement bedroom because she owned the home:

"After I identified Caroline as the homeowner and she said it was her house and she stayed with me during the search, I felt no reason to ask anybody else. It was just a regular bedroom. It would be like a kid's bedroom. If you ask a homeowner if you can go and search a bedroom, there's not a problem.

"There was not a lock on the door. There was not an apartment number. There was nothing identified it as being somebody's dwelling where it's separate from the rest of the house."

The case at bar, however, presents a set of facts significantly different from those in *Rodriguez*. Here, the defendants were present immediately preceding the search and expressly objected to any warrantless search of their rented bedroom. While it is true that "the consent of one who possesses common authority over premises or effects is valid as against the *absent, nonconsenting person* with whom that authority is shared" (emphasis added), *Matlock*, 415 U.S. at 170, 94 S.Ct. at 993, 39 L.Ed.2d at 249, that rule, as modified by *Rodriguez*, contemplates two requirements: (1) that the person consenting to the search have or appear to have common authority over the area, and (2) that the person with whom the authority is shared be absent and nonconsenting rather than present and objecting. Furthermore, it is generally the law that one cotenant's consent is not effective to validate a search over the express objection of another present cotenant when the objecting cotenant has a greater privacy interest in the area to be searched. See 3 LaFave, Search and Seizure (1987) 248–253, Section 8.3(d); see, also, Annotation, Evidence—Search Authorized by Cotenant (1981), 4 A.L.R.4th 1050.

To proceed with the search, the officer must have concluded not only that Carolyn Williams had the authority to consent to the search, but that her consent would override the defendants' express assertion of their rights. As noted by the trial court, the officer here was not acting upon a mistake of fact— he was acting on an erroneous conclusion of law. In *Rodriguez*, the court held "only that the Fourth Amendment does not invalidate warrantless searches based on a reasonable mistake of fact, as distinguished from a mistake of law." *United States v. Whitfield* (C.A.D.C.1991), 939 F.2d 1071, 1073. *Rodriguez* applies to validate searches where an officer would have had valid consent if the facts were

as the officer reasonably believed them to be. *Id.* at 1074. *"Rodriguez* would not validate, however, a search premised upon an erroneous view of the law. * * * For example, an investigator's erroneous belief that landladies are generally authorized to consent to a search of a tenant's premises could not provide the authorization necessary for a warrantless search." *United States v. Brown* (C.A.2, 1992), 961 F.2d 1039, 1041.

■ If the facts of this case were as the officer believed them to be, the consent of Carolyn Williams would still be insufficient to validate the warrantless search over the defendants' express objections. Furthermore, the information available to the officer at the time of the search clearly indicated that the defendants had a significant privacy interest in the place to be searched: they were adults; the place to be searched was their bedroom; the room contained their belongings; the room was walled off from the remainder of the basement; and there was no evidence that Carolyn Williams used or had mutual access to the area. The officer's conclusion that, notwithstanding the appellants' express objections, Carolyn Williams could validly consent to a search of her adult nephews' bedroom is not based on factually erroneous information presented to the officer, but rather on misapprehension of the applicable law.

The assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and DICKINSON, J., concur.