(No. 37287.

The People of the State of Illinois, Defendant in Error, *vs.* L. C. Palmer, Plaintiff in Error.

*Opinion filed Nov. 30, 1962.—Rehearing denied Jan. 28, 1963.*

WESTBROOKS, HOLMAN and E. F. JOHNSON, of Chicago, (CLAUDE W. B. HOLMAN, ALVIN A. TURNER, and EVELYN F. JOHNSON, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and DEAN H. BILTON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, L. C. Palmer, otherwise called Henry Palmer and Andrew Clinton, was indicted by the Cook County grand jury for the crimes of burglary and receiving and concealing stolen property. He was tried by the court without a jury, found guilty of burglary, and was sentenced to a term of from 1 to 4 years in the Illinois State Penitentiary.

By writ of error defendant seeks reversal, and assigns as error that the evidence was wholly insufficient to support the finding and judgment of the court, and that there was a fatal variance between the indictment and the proof. Alternatively, he seeks a new trial because of numerous errors allegedly occurring at the trial.

The alleged burglary took place on August 1, 1960, at the premises of the Monroe Calculating Machine Company, Inc., at 1130 South Michigan Avenue in the city of Chicago. The only evidence placing the defendant at or near the scene of the alleged burglary was the testimony of one Nathaniel Yancey who was indicted with the defendant and prior to this trial had pleaded guilty and been sentenced to the Illinois State Pententiary where he was confined at the time of his testimony in this case. Yancey identified the defendant and testified that he had known him under the name of L. C. Palmer for about 4 years. On August 1, 1960, he saw the defendant at the defendant's home and at the suggestion of Palmer, Yancey went with him in Palmer's car to the Monroe office. This was then about 2:00 A.M. on August 2. Defendant parked his car in an alley behind the office and Yancey went in through an open door and got 20 adding machines which he put in the trunk and on the seats of the defendant's car. At some point prior to this, although the record is unclear as to the precise time, Palmer had agreed to pay Yancey $500 for his part in the activities. This was denied by Palmer. No money was

ever paid. The defendant stayed in the car, according to Yancey, and they then drove back to defendant's apartment. Defendant went in and got one Riccardo Freeman who was also indicted with Yancey and Palmer, and the three of them carried the machines into the apartment excepting for 4 machines which Yancey took with him in a taxicab and had with him at the time of his arrest. The officer who arrested Yancey about 2:30 A.M. on August 2, testified that there were 4 adding machines on the floor of the cab, and these machines were subsequently identified by the office manager of Monroe as machines taken from the Monroe Company. About 1:30 on the morning of August 3 the arresting officer together with three other officers went to the apartment of the defendant and knocked for admission. When no one came, they went back into the street and saw lights in the apartment, and Freeman, who was known to the police and Yancey as Fleming, left the entrance of the apartment building and told the police that he had come from Palmer's apartment. Fleming then called one Twillie to let the police in and Twillie did admit them to the apartment where the police found in the living room an adding machine in a paper bag which was later identified as the property of the company. The evidence indicated that Twillie, who testified for the defendant, shared the apartment with the defendant and had shared other apartments with him. The office manager of Monroe identified the 4 machines found in the possession of Yancey and the 1 machine found in defendant's possession as being property of the Monroe Company.

The defendant testified in his own behalf and testified that his name was L. C. Fingers and that he had never gone under the name of Palmer and that he had left Chicago prior to August 1 to go to Idlewild, Michigan, with his girl friend, Shirley Clinton, and returned to Chicago on August 3 and then left in September to go to visit his father in Missouri and stayed there until December 1,

1960. About December 13 or 14 his attorney left a message that he was wanted by the police and he went to the Hyde Park police station and surrendered himself. He denied that he ever went anywhere with Yancey, and particularly denied going to the Monroe office or taking any machines or helping Yancey unload machines and that there was no adding machine in his apartment on August 1 or any other time. Shirley Clinton, defendant's girl friend, testified that she met the defendant on July 29 at Idlewild, Michigan, and that they returned on August 3; that she had known the defendant under the name of L. C. Fingers for 5 years. Riccardo Freeman testified that he met Yancey at his apartment about a block from the defendant's apartment on August 1, and Yancey had asked him to come down to the alley and help him move some machines. Freeman went with him and took a machine into the stairway to the back of where defendant lived. This apparently was the machine which the officers found in the apartment. He denied having anything to do with the burglary.

Herman Twillie testified that he had never seen Yancey at Fingers's home, that he knew no L. C. Palmer but he knew a Henry Palmer and that Fingers was not in the apartment on either August 1 or August 2. He rented his bedroom from Fingers and paid him rent for it.

As to defendant's contention that there was a fatal variance between the allegations and the proof, we note that defendant was indicted under the name of L. C. Palmer, otherwise called Henry Palmer, otherwise called Andrew Clinton. There was no testimony excepting that of Yancey that defendant was known as L. C. Palmer. Throughout defendant's testimony he maintained that he was L. C. Fingers and not L. C. Palmer. Defendant argues that he cannot be indicted under one name and convicted under another name and states that his counsel said nothing and did nothing to warrant the trial court in deciding that this point had been waived. We do not agree. The record

indicates that at the arraignment on January 5, 1961, his counsel stated "This is the case of Mr. L. C. Palmer who is also called L. C. Fingers, Indictment No. 60-2604." On that day defendant's attorney entered his written appearance for L. C. Palmer. In *People* v. *Goldberg,* 287 Ill. 238, 244, we held that on a motion in arrest of judgment the defect of a misnomer could be reached since that motion opened up the entire record for examination and reaches any defect apparent therein. In that case defendant had entered his plea of not guilty under his correct name of Philip Goldberg, whereas in two of the fifty counts in the indictment he was referred to as Philup Goldberg or Philip Holdberg. However, in this case defendant's counsel appeared on behalf of L. C. Palmer and pleaded not guilty for L. C. Palmer. Thus the defendant falls squarely within the doctrine of *People* v. *Hauser,* 210 Ill. 253, 268, where we held that where the defendant did not, by any plea, urge that his name was not correctly stated in the indictment, he was estopped to deny that he was correctly named therein.

While the evidence linking defendant to the scene of the crime is the testimony of his accomplice, Yancey, a convicted felon and a narcotics addict, nevertheless such evidence is competent, even without corroboration, and we have repeatedly held that a conviction can be sustained by the uncorroborated testimony of an accomplice if the trier of fact is convinced of guilt beyond a reasonable doubt. *People* v. *Flaherty,* 396 Ill. 304, 314; *People* v. *Leslie,* 18 Ill.2d 420, 424.

This court will not substitute its judgment on the matter of credibility of witnesses and the weight to be given their testimony where the trial judge saw and heard them testify, unless we can say the proof was so unsatisfactory as to justify a reasonable doubt as to defendant's guilt. *People* v. *Mack,* 25 Ill.2d 416, 422; *People* v. *Dillon,* 24 Ill.2d 122.

Defendant alternatively seeks a new trial because of the court's refusal to allow the motion to suppress the evidence.

The hearing on the motion to suppress proceeded along with the bench trial and was based upon the allegedly improper search of defendant's home without his consent and without any reasonable grounds to believe defendant had committed any crime, no crime having been committed in the presence of the searching officers. The testimony of the searching officers who had arrested Yancey the preceding day established that there was no breaking into the apartment. The search party was admitted by Twillie, a tenant of defendant, and the adding machine was found in the living room, a room of common usage. In *People* v. *Perroni*, 14 Ill.2d 581, 590, we said "the rule seems to be well established that where two persons have equal rights to the use or occupation of premises, either may give consent to a search and the evidence thus disclosed can be used against either." We hold the motion to suppress was properly overruled.

Defendant also complains of certain interrogation of witnesses by the court, the inquiry by the court and prosecutor regarding crimes unrelated to the crime charged in the indictment, and certain rulings on the admissibility of evidence. We have examined the record, in the light of these assignments of error, and are constrained to observe that defendant's claim that these matters prejudiced him at the trial assumes that what might prejudice a jury need also prejudice the trial judge. Where the judge is the trier of facts, his interrogation of witnesses to clear up points insufficiently developed by counsel is proper where such interrogation is related to the issues involved. This is discretionary with the court, and the record here shows no abuse of that discretion.

Defendant's claim that the prosecutor and the judge improperly inquired as to other crimes unrelated to the crime charged in the indictment is without merit. These matters which related to dealings in "hot merchandise" were first elicited by defendant in his cross-examination of

Yancey, and defendant developed that Yancey had done business with Palmer for four years. Any unfavorable inferences resulted from defendant's questioning, and he cannot complain. At the conclusion of defendant's cross-examination, the court asked Yancey four questions relating to his business dealings over four years, and no objection was made by defendant. When Yancey was recalled by the State, he was asked on direct examination "You also testified previously that you had known—you had done business with L. C. Palmer many times before, is that right?" No objection was made either to the question or the affirmative answer. When the prosecutor then asked "How many times, if you know?", defendant objected that this was an attempt to show other illegal acts. The court sustained the objection. Later, Yancey testified to doing business for three years with defendant, giving him merchandise and receiving money. Nothing in either of these latter questions or answers indicated any illegality in the transactions, and they were properly before the court on the issue developed by defendant as to acquaintance between Yancey and Palmer.

As to the contention that reversible error was committed by the admission of hearsay testimony and the undue restriction of defense counsel in his attempt to attack Yancey's credibility, we hold the admission of testimony of a telephone conversation between the manager of Monroe and the police officer who arrested Yancey relating to the serial numbers of the machines was improper, but not reversible error, since we presume the court considered only the competent evidence, and the manager subsequently personally identified the machines at the police station. (*People v. Cox*, 22 Ill.2d 534; *People v. Richardson*, 17 Ill.2d 253.) We find nothing in the record to substantiate the contention that defendant's counsel was unduly restricted in his cross-examination of Yancey.

Defendant points out that the adding machines were

not produced at the trial and argues that this omission requires reversal. There was a connected chain of testimony from the State's witnesses as to the machines found in Yancey's possession and the machine found in defendant's possession. No further proof of specific items taken is necessary to support a conviction for burglary, as the gist of the offense is the entry of a building with felonious intent, (*People* v. *Urbana,* 18 Ill.2d 81, 93), and when that entry and intent are shown, proof of the specific items taken is not essential. *People* v. *Iannacco,* 11 Ill.2d 55.

From an examination of the entire record, we find that the defendant received a fair trial and was properly convicted of burglary. Accordingly the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*