**People of the State of Illinois, Plaintiff-Appellee, v. Earl Morris, Jr. and Charles McElrath, Defendants-Appellants.**

**Gen. Nos. 53,793, 53,794.**

First District, Fourth Division.

April 8, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED
Armed robbery. Ill Rev Stats 1967, c 38, § 18–2.

JUDGMENT
After a bench trial, these two defendants were found guilty of armed robbery and sentenced to terms of 4 to 12 years (Morris) and 2 years to 2 years and one day (McElrath). A third defendant, Emerson Naugher, was

also found guilty and admitted to probation. He has not appealed.

## CONTENTION ON APPEAL

Defendants contend that the State failed to prove them guilty beyond a reasonable doubt.

## EVIDENCE

Filipi Espinosa, complaining witness for the State:

On December 21, 1967, at approximately 5:30 a. m., he was in the vicinity of 677 N. Clark Street when three men "came upon" him, hit him over the head, kicked him, and put a knife to his throat. He identified defendants in court as his assailants (along with the third defendant not a party to this appeal) and also identified the knife they held to his throat. He had seen defendants on several occasions in the afternoon for about a week before, around the 900 block on La Salle. About an hour prior to the occurrence, he had three beers and then went to a nearby restaurant where he spent $2 from a twenty dollar bill. He was not intoxicated "too much." He saw defendants walking together down the street. They first hit him from behind and took $18 from his pocket. They were still hitting him as he lay on the sidewalk when the police arrived. The police placed the defendants against the wall. Defendant McElrath was holding the money in his hand.

Leslie Foy, for the State:

He was a policeman, and at about 5:30 a. m., on December 21, 1967, while patrolling the 700 block of North Clark Street, he saw three male Negroes knocking a Puerto Rican to the ground. The three men, whom he identified in court as the defendants, dragged the victim into a hallway at 677 N. Clark. The witness and his partner got out of their vehicle and proceeded to the hallway, where he saw defendants holding the victim down on the stairs. McElrath was holding a knife to the vic-

tim's throat while Morris was taking money from his pocket. When the police entered, McElrath dropped the knife to the floor. The witness recovered both the money ($18) and the knife, which he identified in court, and they were introduced into evidence. He noticed other people loitering around the street, including two or three inside the vestibule at 677 N. Clark, one "sleeping off in a corner." As he arrested defendants, he also placed two other men against the wall to search them, but did not arrest them.

In his opinion, the victim had been drinking but was coherent and not completely under the influence of alcohol.

Charles McElrath, on his own behalf:

He lives at 677 N. Clark. On the day in question, he was on his way to get some breakfast and passed the other defendants who were drinking wine in the hallway. He had never seen them before.

He saw the victim stagger across the street, then miss his step and fall on the sidewalk in front of 677 N. Clark. He had noticed the police car parked nearby and felt that he should help the victim before the police arrested him. He walked over to him to give him aid, explaining to the victim that the best thing would be to get off the street before being arrested. The witness told him he could rent a room at 677 N. Clark. They went inside the building where the other defendants were still drinking wine, and started up the stairs when two other men walked in behind. Then the two policemen came in with guns drawn and ordered everybody out of the hallway. The officers had everybody against the wall, including the victim, until one policeman said, "No, not him, he is the victim." One of the other two men threw the knife down by the witness' feet to get rid of it. The witness tried to explain to the officers that someone else threw it there.

The officer was lying when he testified that he (the witness) had held the knife and struck the victim. He

was not dragging the victim into the hallway, but was helping him walk.

Emerson Naugher, on his own behalf:

On the morning in question he had just left a friend at the hotel at 677 N. Clark. Only he and Morris were in the hallway and they were drinking some wine. He never saw Espinosa in the hallway at that time. Two other men came in with McElrath right before the police, and they were searched but let go. The police searched the witness but found nothing. He then testified that "When the police came in they brought out all of us, wasn't but three of us arrested."

Earl Morris, on his own behalf:

He lives at 675 N. Clark and, at the time of the incident, was in the vestibule at 677 N. Clark with several men, including Naugher, to whom he had just given some wine. He saw the victim come in with McElrath and two others. They walked by him as the witness was on his way out. Then the police opened the door and put a pistol in his face. The police ordered all the men onto the sidewalk and against the wall, searched them, and took $18 from the witness.

He never struck the victim or took any money from him.

At the hearing in aggravation and mitigation, it was shown that McElrath had been convicted of aggravated assault in 1962. It was also shown that, over a period of 25 years, Morris had been convicted of manslaughter (reduced from murder), petty larceny twice, tampering with an automobile, burglary twice, and theft (reduced from robbery).

OPINION

Defendants' only contention on appeal is that the evidence is so conflicting and confusing as to raise a reasonable doubt of their guilt. The basic conflict, however, is

between the version of the occurrence offered by the State and that offered by defendants. The testimony of the victim is substantially corroborated by that of the police officer, what inconsistencies there were being minor and insufficient to render their testimony unworthy of belief. People v. McAfee, 80 Ill App2d 142, 145, 225 NE 2d 74. Each, in addition, positively identified defendants as the participants in the robbery.

 Where the evidence is conflicting, it is the province of the trier of fact to determine the credibility of the witnesses and the weight to be accorded their testimony. We recognize, as argued by defendants, that for a conviction to be sustained, it must rest upon the strength of the State's case, not the weakness of the defendant's. People v. Coulson, 13 Ill2d 290, 296, 149 NE2d 96. But we find in this record sufficient credible evidence introduced by the State to establish defendants' guilt beyond a reasonable doubt, and, thus, to support the trial court's judgment. We cannot say that the proof was so unsatisfactory as to raise a reasonable doubt of guilt, and so to justify the interposition of our judgment in this regard. People v. Palmer, 26 Ill2d 464, 469, 187 NE2d 236.

The judgments are affirmed as to both defendants.

Affirmed.

DRUCKER and LEIGHTON, JJ., concur.