THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. FLAGAN T. PICKENS, Defendant-Appellee.

Fifth District    No. 5—94—0129

Opinion filed September 26, 1995.

Thomas Finks, State's Attorney, of Shelbyville (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Robert S. Burke, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE KUEHN[1] delivered the opinion of the court:
On June 15, 1993, defendant Flagan T. Pickens was charged by

---

[1]Justice Lewis, originally one of the panel members on this case, retired effective August 1, 1995; Justice Kuehn was assigned to this case in substitution for Judge Lewis.

information with unlawful possession of not more than 2.5 grams of cannabis per section 4(a) of the Cannabis Control Act (Ill. Rev. Stat. 1991, ch. 56¹/₂, par. 704(a) (now 720 ILCS 550/4 (West 1994))). Defendant filed a motion to suppress evidence seized in a December 17, 1992, consent search of his house. On October 27, 1993, the court heard defendant's motion to suppress. Following the hearing, the circuit court entered an order suppressing the evidence. The State filed a motion for reconsideration. On February 4, 1994, the court heard and denied this motion. The State timely filed a certificate of impairment to allow an appeal pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)).

On appeal, the State contends that the trial court was manifestly erroneous in suppressing the evidence and that the case should be remanded for trial. We disagree and affirm the trial court's order.

At the October 27, 1993, suppression hearing, the court heard the following evidence.

Shelby County Sergeant Todd Shadwell, a Central Illinois Drug Task Force inspector, testified that the Central Illinois Drug Task Force received an anonymous tip on December 17, 1992. The tip involved drug activity at a residential address in Herrick, Illinois. Sergeant Shadwell and Inspector Elam, another member of the Task Force, went to the Herrick address. The two inspectors knew that defendant Pickens and Jason Cole (Cole) lived at the address. They had no information that anyone else lived there. They knocked on the front door. A man known to the inspectors as Rodney Burris (Burris) answered the door. Sergeant Shadwell asked Burris if Cole or defendant Pickens, the known residents of the house, was home. Burris told Sergeant Shadwell that Cole and defendant Pickens were not present. Sergeant Shadwell noticed an individual asleep on the living room couch and asked Burris who the individual was. Burris indicated that this individual was Curt Allen (Allen). Sergeant Shadwell wanted to speak to Allen and asked Burris to have Allen come to the door. Burris did not react, so Sergeant Shadwell called to Allen and identified himself as a police officer. Allen came to the door. Sergeant Shadwell asked Allen if he was staying at the house, and Allen acknowledged that he was. Sergeant Shadwell and Inspector Elam had no information that Burris or Allen lived at defendant's house. Sergeant Shadwell told Allen about the anonymous tip and then asked Allen if he and Inspector Elam could search the premises. Allen gave verbal consent to search. Sergeant Shadwell and Inspector Elam searched the house for approximately 30 to 45 minutes and seized drug paraphernalia and suspected drugs. All reports prepared by Sergeant Shadwell refer to the search as a consent search.

Rodney Burris testified that the night before the search, several people stayed at defendant's residence. The police requested permission to come in the residence, but Burris did not allow entry. Burris told the police that he did not live at the house and could not give permission to search the premises. After Burris denied permission to search, the two inspectors asked and received permission from Allen. Sergeant Shadwell and Inspector Elam searched the house.

Defendant Pickens testified that he was the sole owner of the house and that Cole was his only tenant. Other people, including Burris and Allen, sometimes spent the night. Occasionally, Allen stayed at his house a couple nights per week. Allen lived with his parents outside Herrick. Allen stayed at defendant's house when he did not have a ride home. Allen did not pay defendant rent, utilities, or other expenses. Defendant did not give the police permission to search his house. Defendant did not give Allen the authority to consent to a search of his house.

The State raises three points on appeal. The State contends that the trial court's suppression order should be reversed because the court erred in holding that an apparent authority consent search is invalid. The State then asserts that the case should be remanded because Sergeant Shadwell's testimony showed that the officers had a reasonable belief that they had consent to search. Finally, the State contends that the trial court's suppression order should be reversed because the court erred in holding that only a resident could consent to a search.

Initially, we note that a trial court's ruling on a motion to suppress will not be disturbed unless clearly erroneous. (*People v. Melock* (1992), 149 Ill. 2d 423, 432, 599 N.E.2d 941, 944; *People v. Henderson* (1990), 142 Ill. 2d 258, 293, 568 N.E.2d 1234, 1251.) When the facts and the credibility of the witnesses are not in dispute, the question presented is a legal one that the reviewing court may consider *de novo*. *People v. Foskey* (1990), 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197; *People v. Galdine* (1991), 212 Ill. App. 3d 472, 478-79, 571 N.E.2d 182, 187.

We first consider whether the trial court erred in concluding that the third party, Allen, lacked common authority to consent to the search of defendant's house.

In *United States v. Matlock* (1974), 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988, the United States Supreme Court held that the fourth amendment does not prohibit a warrantless search conducted with the consent of a third party possessing common authority over the premises. Actual common authority is defined as "mutual use of the property by persons generally having joint access or control for

most purposes." (*Matlock*, 415 U.S. at 171 n.7, 39 L. Ed. 2d at 250 n.7, 94 S. Ct. at 993 n.7.) Common authority is recognized in situations with family, marital, or cohabitant relationships. (See, *e.g.*, *Foskey*, 136 Ill. 2d at 87, 554 N.E.2d at 202; *People v. Brown* (1987), 162 Ill. App. 3d 528, 539-40, 515 N.E.2d 1285, 1291-92; *People v. Palmer* (1962), 26 Ill. 2d 464, 470, 187 N.E.2d 236, 240.) The third party's degree of authority and control over the residence cannot be substantially inferior to that degree possessed by the defendant, and the third party's right to occupy and use the residence must equal or exceed the defendant's right of occupation. (*People v. Keith M.* (1993), 255 Ill. App. 3d 1071, 1084, 625 N.E.2d 980, 988-89.) A social guest does not possess common authority to validly consent to a search of a residence. (*People v. Speer* (1989), 184 Ill. App. 3d 730, 736-37, 540 N.E.2d 1089, 1093.) If a guest resides elsewhere, the guest may not claim an interest in the host's house. *People v. White* (1987), 117 Ill. 2d 194, 212, 512 N.E.2d 677, 683.

▪ Factually, the question turns on whether Allen had common authority to consent to a search of the house. Allen was not listed on defendant's lease. Allen did not reside with defendant and lived elsewhere with his parents. Allen occasionally stayed at defendant's residence when he had no ride home. Allen contributed nothing towards defendant's rent or utilities. In light of this evidence, we find that the trial court committed no error in ruling that Allen lacked common authority to consent to a search of defendant's residence.

As the State's other two issues relate to the present state of Illinois law regarding apparent authority consent searches, we will consider the issues together. At the conclusion of the testimony at the suppression hearing, defendant presented the trial court with a copy of *People v. Speer* (1989), 184 Ill. App. 3d 730, 540 N.E.2d 1089. The court suppressed the evidence obtained during the search based upon the testimony, arguments, and the *Speer* case.

In his brief, defendant contends that the State waived the issue of apparent authority by not specifically raising the issue at the suppression or reconsideration hearings. The record reveals that generally the State raised and the trial court considered the issue of apparent authority.

▪ In *Speer*, the court found that a social guest lacked authority to consent to a premises search and cited *People v. Miller* (1968), 40 Ill. 2d 154, 238 N.E.2d 407, in which our supreme court considered and rejected the apparent authority doctrine. Following the *Speer* opinion, the United States Supreme Court held that consent searches pursuant to consent by one whom the police reasonably believed had authority to consent did not violate the fourth amendment. (*Illinois*

*v. Rodriguez* (1990), 497 U.S. 177, 188-89, 111 L. Ed. 2d 148, 161, 110 S. Ct. 2793, 2801.) In *Rodriguez*, the court emphasized: "determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the belief"' ' that the consenting party had authority over the premises?" (*Rodriguez*, 497 U.S. at 188, 111 L. Ed. 2d at 161, 110 S. Ct. at 2801, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) In applying the objective standard, courts should look at the facts available to the officer at the moment that the consenting party had the alleged authority over the premises. (*Rodriguez*, 497 U.S. at 188, 111 L. Ed. 2d at 161, 110 S. Ct. at 2801.) The officer need not always be correct but must always be reasonable. *Rodriguez*, 497 U.S. at 185, 111 L. Ed. 2d at 159, 110 S. Ct. at 2800.

The standards set forth in *Rodriquez* are binding upon Illinois courts as the United States Supreme Court addressed a Federal constitutional question in a State case. (*People v. Gillespie* (1990), 136 Ill. 2d 496, 502-03, 557 N.E.2d 894, 897.) Furthermore, our supreme court adopted *Rodriguez* in *People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234, holding that "when a court is deciding whether consent was given ***, the circumstances must have been such that the police could have reasonably believed they had been given consent to enter." *Henderson*, 142 Ill. 2d at 299, 568 N.E.2d at 1254.

■ For apparent authority consent searches, the facts known to the police officers "must be sufficient to enable them to conclude that the consenter's right to occupy and use the premises at least approximates that of the defendant, such that it can be said that the defendant has assumed the risk that the third party will allow the search of the common area." *Keith M.*, 255 Ill. App. 3d at 1084-85, 625 N.E.2d at 989.

■ Looking at the specific facts of this case and applying the *Rodriguez* reasonable-police-officer standard, we consider what Sergeant Shadwell and Inspector Elam knew at the point when they asked Allen if they could search defendant's residence. On December 17, 1992, the Central Illinois Drug Task Force received an anonymous tip of drug activity at defendant's Herrick, Illinois, residence. Sergeant Shadwell and Inspector Elam knew that the particular residence was occupied by defendant and Cole. The door was answered by Burris. The officers knew that Burris did not reside with defendant. Sergeant Shadwell spoke to Allen and ascertained that Allen was staying at the house. The officers had no previous information that Allen was staying or living at defendant's house. The officers asked no additional questions about Allen's status and authority over

defendant's residence. The officers asked Allen for permission to search defendant's house. Allen gave verbal consent.

Based upon the facts known to the officers when they asked Allen for consent to search defendant's residence, the officers could not have reasonably concluded that defendant gave Allen authority over the premises and assumed the risk that Allen would consent to a warrantless search. By not securing a search warrant, the officers must accept the risk of mistake in relying upon the consent. We find that the officers did not have a reasonable basis to conclude that Allen could consent to the search.

Our supreme court recently warned that "the apparent authority rule does not allow law enforcement officers to 'proceed without inquiry in ambiguous circumstances or always accept at face value the consenting party's apparent assumption that he has authority to allow the contemplated search.' " (*People v. James* (1994), 163 Ill. 2d 302, 319, 645 N.E.2d 195, 198, quoting 3 W. LaFave, Search & Seizure § 8.3(g), at 266 (2d ed. 1987).) As one commentator has noted:

> "[U]nder a sound application of the apparent authority rule the police must be required to make reasonable inquiries when they find themselves in ambiguous circumstances. *** [S]ometimes the facts known by the police cry out for further inquiry, and when this is the case it is not reasonable for the police to proceed on the theory that 'ignorance is bliss.' " 3 W. LaFave, Search & Seizure § 8.3(g), at 266-67 (2d ed. 1987).

Allen was seen sleeping on the living room couch of a house the officers knew served as the residence of two other people. Allen's indication that he was staying there presented an ambiguous circumstance that cried out for further inquiry. The officers were perfectly content to accept Allen's consent to search at face value. That acceptance was not objectively reasonable under the circumstances.

The trial court only cited the *Speer* opinion in its ruling and stated that apparent authority consent searches were invalid. We realize that our affirmance of the trial court suppression order is based upon authority different from that relied upon by the trial court. However, a judgment may be sustained on any ground warranted by the record regardless of the reasons upon which the trial court relied. (*People v. Johnson* (1989), 188 Ill. App. 3d 147, 153-54, 544 N.E.2d 35, 39.) The controlling question before the reviewing court is the correctness of the trial court's conclusion, not the validity of its rationale. *People v. Dyer* (1986), 141 Ill. App. 3d 326, 332, 490 N.E.2d 237, 241, citing *People v. Tobe* (1971), 49 Ill. 2d 538, 547, 276 N.E.2d 294, 300.

The trial court's ruling on the motion to suppress was not against established law or plainly erroneous. We find that Allen did not have common or apparent authority to consent to a search of defendant's residence.

For the foregoing reasons, the judgment of the circuit court of Shelby County is affirmed.

Affirmed.

WELCH and HOPKINS, JJ., concur.