544 S.E.2d 276

**The STATE, Respondent,**

v.

**Bernard LAUX, Appellant.**

No. 25262.

Supreme Court of South Carolina.

Heard Feb. 6, 2001.

Decided March 19, 2001.

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William E. Salter, III, of Columbia, and Solicitor George M. Ducworth, of Anderson, for respondent.

WALLER, Justice:

Appellant, Bernard Laux, was convicted of murder and sentenced to thirty years. We affirm.

## FACTS

Laux was charged with the murder of his long-time friend and drinking buddy, Frank Joseph (Butch) Beylotte, III, who allegedly owed Laux $2000.00. Beylotte's body was found on John's Island in the early morning hours of March 4, 1997, having been shot in the head and shoulder, and apparently run over by an automobile.

Beylotte was last seen alive with Laux in the late evening hours of March 3, 1997, at the Golden Key Club and the Hayloft Lounge in Charleston. The following morning, police went to Laux' apartment to find him. According to the *in camera* testimony of Detective Michael Conkey, he went to Laux' apartment at 11:15 am and was met at the door by Dee Cooke, who answered the door in her night clothes, appearing to have just gotten out of bed. Cooke told Conkey she lived there with Laux and that it was her apartment.[1] Cooke

---

1. Conkey also had information from Golden Key employees that Cooke lived in the apartment with Laux.

consented to police searching the one-bedroom apartment, and signed a waiver to that effect. According to Conkey, he saw female clothing in the bedroom and hair spray and brushes in the bathroom. Conkey did not recall seeing a suitcase on the floor.

Dee Cooke testified *in camera* that she had been living with Laux for about one week, that she had a key to the apartment, and that she had told police she lived there and had consented to the search of the apartment. Although she was still "living out of [her] suitcase some," she testified that a number of her personal items were in the bedroom and bathroom.

Laux moved to suppress the evidence seized,[2] contending Cooke was an overnight guest who had no authority to consent to the search. The trial court ruled there was an appropriate consent, either by a person with apparent authority, or by a person temporarily living in the house.

## ISSUE

Did Cooke, a temporary resident in Laux' apartment, have actual or apparent authority sufficient to consent to a search of the premises, such that the trial court properly denied the motion to suppress?

## DISCUSSION

The test of whether a third party has sufficient status to consent to a search is whether the third party possesses common authority over or has some other sufficient relationship to the premises or effects searched. *U.S. v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *State v. Middleton*, 266 S.C. 251, 258–259, 222 S.E.2d 763, 766 (1976). Common authority is defined as mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable for officers to believe the person granting consent has the authority to do so. *Matlock*, 415 U.S. at 171, note 7, 94 S.Ct. 988. *Accord State v.*

---

2. Some .357 magnum bullets, a holster, and a few papers were found in the bedroom and kitchen as a result of the search. Laux' 357 revolver was subsequently found stuck inside some cinder blocks outside the Golden Key Club, and a spent bullet shell found at the scene was consistent with having been shot from Laux' weapon.

*Cannon,* 336 S.C. 335, 520 S.E.2d 317 (1999)(noting that any person with an equal right to use or occupy property may consent to its search).

■ Whether an individual has actual authority to consent to a search is not, however, necessarily dispositive. In *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the United States Supreme Court held a consent to search may be valid if based upon apparent authority. The Court stated, "determinations of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" 497 U.S. at 188, 110 S.Ct. 2793. *See also United States v. Whitfield,* 939 F.2d 1071, 1074 (D.C.Cir.1991); *State v. Williams,* 101 Ohio App.3d 340, 655 N.E.2d 764 (1995) (finding *Rodriguez* applicable to situations in which an officer would have had valid consent to search if the facts were as he reasonably believed them to be).[3]

■ Under *Rodriguez,* we find the officers in this case were clearly justified in their belief that Cooke had authority to consent to the search.[4] Officer Conkey was told by people at

3. Although this Court has not directly addressed the issue, we have implicitly upheld a search based upon officers' reasonable belief that the person authorizing the search had the authority to do so. *State v. Bailey,* 276 S.C. 32, 37, 274 S.E.2d 913, 916 (1981) (where defendant left his pickup truck parked in his uncle's yard, without any instructions or restrictions on its use, and vehicle was unlocked with keys inside, it was "reasonable for the officers to believe ... the [uncle] had authority to consent to the search."). *See also State v. Brockman,* 329 S.C. 115, 494 S.E.2d 440 (Ct.App.1997), *rev'd on other grounds,* 339 S.C. 57, 528 S.E.2d 661 (2000)(recognizing that suppression is not warranted if officers had an erroneous but reasonable belief of authority to consent).

4. Accordingly, we need not decide the more difficult question of whether she had actual authority to do so. *Compare People v. Lewis,* 716 N.Y.S.2d 204 (N.Y.App.Div.2000) (defendant's guest who had been living in defendant's residence for approximately one week possessed requisite degree of authority and control over premises to voluntarily consent to police officers' entry) *with United States v. White,* 40 M.J. 257 (C.M.A.1994) (roommate who had shared apartment with accused for only two weeks was without actual authority to consent to entry of accused's bedroom); *People v. Pickens,* 275 Ill.App.3d 108, 211 Ill.Dec. 823, 655 N.E.2d 1206 (1995) (overnight guest whom police found sleeping on defendant's sofa, and whom police had no information lived

the Golden Key Club that Cooke was living with Laux. Conkey went to Laux' apartment and was met by Cooke, who answered the door in her bedclothes at 11:15 am, told him this "was her apartment," and that she "stayed there with Mr. Laux." She then orally consented to a search of the apartment, and signed a written consent search waiver of rights form in which she stated she was "the owner or person in charge of the item or premises to be searched." Moreover, Conkey observed female clothing in the bedroom and hair spray and hair brushes in the bathroom. Conkey did not recall seeing a suitcase on the floor of the apartment.[5]

Dee Cooke verified that she had told police she lived in the apartment and had given her consent to the search, and that a number of her personal effects were in the bathroom and bedroom. She also testified that she possessed a key to the apartment. However, she acknowledged that she had only been staying there for about a week, and that she was still "living out of her suitcase some."

Under these circumstances, we find it was entirely reasonable for Detective Conkey to assume Cooke had authority to consent to the search of the premises. *Accord United States v. White, supra* (although roommate who had shared apartment with accused for only two weeks was without actual authority to consent to entry of accused's bedroom, officers nonetheless reasonably relied on roommate's apparent authority to consent); *United States v. Ramirez*, 115 F.Supp.2d 401 (S.D.N.Y.2000) (objectively reasonable for officers to conclude defendant's girlfriend had authority to consent to search of his apartment where she had property at the apartment, had been staying there for at least one week prior to the search, and she opened the door and let officers inside); *State v. McCaughey*, 127 Idaho 669, 904 P.2d 939 (1995) (facts not known to officer at time of search not relevant to question of whether

---

in defendant's residence, had no authority to consent to search of defendant's residence).

**5.** We have viewed photographs of the search scene in which a closed "suitcase" is shown on the floor of the bedroom. The suitcase is small, brown, and leather and somewhat resembles a large attache case. We find nothing in its appearance which would have alerted Conkey's attention to the fact that Cooke was not a permanent resident of the premises.

they reasonably believed defendant's wife could consent to search). *See also U.S. v. Kinney,* 953 F.2d 863, 866–67 (4th Cir.1992) (joint resident's consent to search closet valid because officers had reasonable belief in apparent authority because she possessed closet key and opened closet in presence of officers); *U.S. v. Thomas,* 120 F.3d 564, 571 (5th Cir.1997), *cert. denied* 522 U.S. 1061, 118 S.Ct. 721 (1998) (babysitter had apparent authority to consent to search of common areas of apartment, including bedrooms and areas he was permitted to use and given free access to as a babysitter).

We hold it was objectively reasonable for officers to conclude Cooke had apparent authority to consent to the search of the residence. Accordingly, the trial court's ruling denying Laux' motion to suppress is

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.