**Darin E. CARTER, Carlene K. Carter, Individually and as the Executor of the Estate of Richard E. Carter, Deceased, Plaintiffs,**

v.

**Ryan L. ROSENBECK, Jason Williamson, Larry Woliung, Eric Borklund, and the City of Farmer City, Illinois, Defendants.**

No. 00–3239.

United States District Court, C.D. Illinois.

Aug. 12, 2002.

Stephen R. Myers, Clinton, IL, for Plaintiffs.

Richard P. Klaus, Heyl, Royster, Voelker & Allen, Urbana, IL, for Defendants.

## OPINION

RICHARD MILLS, District Judge.

This is a civil rights action under 42 U.S.C. § 1983.

The allegations are without merit.

Summary Judgment is entered on behalf of all Defendants.

## BACKGROUND

Carlene and Richard Carter spent the weekend of September 1998 in Chicago, Illinois. They left their seventeen-year-old son, Darin Carter, at home in Farmer City, Illinois. Ryan Rosenbeck, Carlene Carter's adult nephew, stopped by the Carter residence and discovered Darin and several of his friends preparing for an under-aged drinking party. Rosenbeck notified the police and allowed them to enter the house to arrest three individuals for possession of alcohol. The Carters are now suing their nephew Rosenbeck, the City of Farmer City, two police officers and the Chief of Police for violations of the Fourth and Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

The following facts are undisputed. Over the course of his lifetime, Rosenbeck attended holiday functions at the Carter home in Farmer City. Although Rosenbeck worked in Farmer City, he lived in Fisher, Illinois, a town about 20 miles away. Rosenbeck occasionally ate meals with the Carters, assisted Richard Carter with household repairs, and spent the night at the Carter home. In July 1998, Rosenbeck stayed at the home for a week to care for the Carter's dog while the family was out of town.

On Saturday, September 19, 1998, Richard and Carlene Carter left Farmer City around noon to attend weekend meetings in Chicago, Illinois. Darin Carter stayed at home. That night, Rosenbeck finished his shift as a dispatcher for the Farmer City Police Department and drove to the Carter home. Upon entering the house, Rosenbeck engaged in a conversation with his cousin, Darin. Darin, who was seventeen years old at the time, stated, "we'll probably be sitting here drinking a few beers tonight." Rosenbeck discovered beer in the refrigerator, which had not been there that morning, and witnessed another minor bringing more beer into the house.[1]

At that time, Rosenbeck left the house and drove to the dispatch center. He asked the on-duty dispatcher to request an officer to return to the station so that he could file a complaint regarding an underage drinking party at the Carter house.[2] Officer Jason Williamson was on duty that night and Officer Eric Borklund, although off-duty, was at the station working on reports. After listening to Rosenbeck's account, Officer Williamson requested Rosenbeck accompany the officers to the Carter house. Upon arriving, Williamson and Borklund entered the house with Rosenbeck. Neither officer announced his presence as a police officer. After an initial search, the officers arrested three individuals, including Darin Carter, for illegal possession of alcohol by minors. These violations were never prosecuted.

Rosenbeck claims Carlene Carter asked him to stay at the house the weekend of September 19–20. In addition, Rosenbeck testified during his deposition that he stayed at the Carter residence on September 18, the night before the Carters left for Chicago. Carlene Carter disputes the accuracy of both statements, asserting that Rosenbeck did not stay at the house September 18, and that she did not request he stay at the house while they were away for the weekend. Interestingly, one of the undisputed facts listed by both parties indicates that Rosenbeck "had been in the same refrigerator that morning before his shift, and the beer had not been there at that time." Rosenbeck testified his shift began at 6:00 a.m. on September 19. Therefore, knowledge regarding the Carter refrigerator could have been obtained in one of two ways: Rosenbeck stayed at his home in Fisher, Illinois on Friday night and stopped at the Carter house prior to 6:00 a.m. on his way to work Saturday morning, or he stayed at the Carter house Friday night.

Plaintiffs have brought suit pursuant to 42 U.S.C. § 1983 against Williamson, Borklund, Rosenbeck, Chief Larry Woliung, and the City of Farmer City for violations of the Fourth and Fourteenth Amendments.[3] Plaintiffs allege officers

---

**1.** Rosenbeck testified this individual was probably Moe Winstead. Darin testified Winstead was around 17 or 18 years of age at the time the incident occurred.

**2.** Rosenbeck testified he reported the underage drinking because as the only adult staying at the Carter residence, he feared he might be held liable for any resulting alcohol-related injuries. Additionally, he did not want anyone to think he had purchased the alcohol for the minors.

**3.** Plaintiffs pursue § 1983 claims against Williamson, Borklund, Rosenbeck, and Larry Woliung in their individual and official capacities as employees of the City of Farmer City. In *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the U.S. Supreme Court attempted to clarify the statement it made in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It said that official capacity suits " 'generally represent only another way of pleading an action against an entity of which an officer is

entered the Carter residence without a warrant and without valid consent. Plaintiffs also allege Darin Carter was arrested without probable cause and was subsequently illegally imprisoned. Plaintiffs assert a failure to train and supervise action against Chief Woliung and allege the City of Farmer City maintained customs and policies that exhibited deliberate indifference to the constitutional rights of Farmer City residents. Lastly, Plaintiffs assert a common law trespass claim against Williamson, Borklund and Rosenbeck.

## ANALYSIS

To prevail on a motion for summary judgment, a defendant must prove that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## I. *42 U.S.C. § 1983*

### A. *Officers Williamson and Borklund*

Plaintiffs assert that Officers Williamson and Borklund acted under color of state law to deprive Plaintiffs of their right to be free from an unreasonable search and unlawful arrest, acts which are prohibited by the Fourth and Fourteenth Amendments of the United States Constitution. *See* 42 U.S.C. § 1983; U.S. CONST. AMEND. IV; U.S. CONST. AMEND. XIV. Specifically, Plaintiffs allege Williamson and Borklund entered the Carter home without consent on September 19, 1998 and conducted an illegal search and arrest. Williamson and Borklund argue they received consent to enter from Rosenbeck—the Plaintiffs' nephew, frequent guest, and the person whom the officers believed was authorized to care for the house while the Carters were in Chicago for the weekend. In addition, they assert that the arrest of Darin Carter was valid as probable cause existed to believe the minor was in possession of alcohol. Williamson and Borklund maintain that even if their entry was unconstitutional and the arrest was made without probable cause, they are protected by the doctrine of qualified immunity as Plaintiffs have failed to present a closely analogous case that would indicate the officers' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### i) Apparent Authority to Consent

 The Fourth Amendment prohibits warrantless entry into a person's home, whether to make an arrest or to search for specific objects. *Payton v. New York,* 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, a warrant is not necessary when a person, whom officers reasonably believe has authority to do so, consents to the entry or the search of a home. *Illinois v. Rodriguez,* 497 U.S. 177,

---

an agent.' " *Graham,* 473 U.S. at 165, 105 S.Ct. 3099 (*quoting Monell,* 436 U.S. at 691 n. 55, 98 S.Ct. 2018). Therefore a suit against these employees in their official capacities is actually a suit against the City of Farmer City. The Court will address the City's liability in its discussion of Count VI.

189, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Officers may not:

> always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? *Terry v. Ohio,* 392 U.S. 1, 21–22[, 88 S.Ct. 1868, 20 L.Ed.2d 889] (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Rodriguez,* 497 U.S. at 188–189, 110 S.Ct. 2793. Officers should make further inquiries when presented with ambiguous circumstances. *See People v. Pickens,* 275 Ill.App.3d 108, 211 Ill.Dec. 823, 655 N.E.2d 1206, 1210 (5th Dist.1995).

The question here is whether Officers Williamson and Borklund were reasonable in believing Rosenbeck had authority to allow the officers access to the house. Plaintiffs assert Rosenbeck did not have authority to consent and that the officers were unreasonable for believing otherwise. Plaintiffs argue the officers knew Rosen-

beck did not live at the Carter residence and did not rent or own the property.

However, it is undisputed that Rosenbeck told several people that he stayed with the Carters on occasion.[4] Williamson testified that Rosenbeck told him he stayed with the Carters, usually for several days at a time. Williamson also knew Rosenbeck had watched the house in the past. In regard to the weekend in question, Williamson testified Rosenbeck told him that "Carlene and Dick put him in charge of the residence, he was staying at the residence, in charge of the residence while they were gone." Borklund also testified that Rosenbeck told him that he stayed at the Carter residence.

Plaintiffs argue the situation was ambiguous; therefore, the officers should have made additional inquiries before accepting Rosenbeck's consent at face value. Plaintiffs cite several cases seeking to prove it was unreasonable to believe Rosenbeck had authority to consent to entry.[5] In *People v. Pickens,* officers were investigating a tip involving drug activity at a particular address in Herrick, Illinois. *Pickens,* 211 Ill.Dec. 823, 655 N.E.2d at 1208. The officers knew Flagan Pickens and Jason Cole lived at the address. Upon arriving at the house, the officers were informed neither Pickens nor Cole was present. The officers noticed an individual asleep on the living room couch and asked him if he was staying at the house. The person identified himself as Curt Allen and acknowledged that he was staying at the house. The officers requested permission to search and Allen granted it. The appel-

---

**4.** Rosenbeck told Lee Scofield, the Farmer City Ambulance Administrator, that he could stay at the Carter residence if required to be in Farmer City to respond as an ambulance driver. In addition, Rosenbeck told Sharon Steiger, a police dispatcher, that he was staying at the Carter residence the weekend of September 18–20. Although irrelevant to the

officers' knowledge on September 19, 1998, it is further evidence that Rosenbeck frequently told others that he stayed with the Carters at their request or his own.

**5.** Of the cases cited by Plaintiffs, the Court finds only *Pickens* factually similar enough to warrant discussion.

late court found the officers' actions were unreasonable. Because the officers knew the house belonged to Pickens and Cole, "Allen's indication that he was staying there presented an ambiguous circumstance that cried out for further inquiry." *Id.* 655 N.E.2d at 1211.

■ In contrast to *Pickens*, the officers in this case knew Rosenbeck was the Carters' nephew. In addition, they knew he stayed at the Carter residence on occasion and had watched the house in the past. The officers were told by Rosenbeck that the Carters had placed him in control of the house for the weekend. Although Carlene denies asking Rosenbeck to watch the house, it only matters what the officers reasonably believed at the time they entered the house. They were familiar with Rosenbeck and had no reason to doubt he was asked to watch the house that weekend. Lastly, it was reasonable to believe Rosenbeck was staying at the house that weekend because it was through his presence there that he gained the knowledge a drinking party was underway. Therefore, the Court finds the situation was not ambiguous and the officers were not required to make further inquiries.

Because Williamson and Borklund reasonably believed Rosenbeck had authority to consent to a warrantless entry, no constitutional violation has occurred. Therefore, Plaintiffs' § 1983 Counts against Williamson and Borklund, alleging the officers violated the Fourth Amendment by entering the home without valid consent, must fail.

ii) Probable Cause for Arrest

■ Darin Carter asserts that no probable cause existed for his arrest; therefore, he was illegally arrested and imprisoned by Williamson. "In Illinois the report of an eyewitness to a crime is sufficient to authorize an arrest." *Gramenos*

*v. Jewel Companies, Inc.,* 797 F.2d 432, 439 (7th Cir.1986). "So long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest." *Jenkins v. Keating,* 147 F.3d 577, 585 (7th Cir.1998).

■ Here, Darin Carter informed Rosenbeck that he intended to "be sitting here drinking a few beers tonight." Rosenbeck also saw beer in the Carter refrigerator and on the floor that had not been present earlier in the day. As Rosenbeck was leaving, he observed another minor bring more beer into the house. Rosenbeck informed the police of these events. The officers knew Rosenbeck. There are no allegations that the officers had any reason to be suspicious or distrustful of Rosenbeck or the information conveyed. Once the officers gained lawful access to the Carter residence, the information was confirmed. Williamson questioned Darin Carter who "did not deny" that he was responsible for some of the beer. Therefore, the Court finds the officers had probable cause to arrest Darin Carter for possession of alcohol. No false arrest, no illegal imprisonment.

### B. *Ryan Rosenbeck*

As no constitutional violations occurred in this case, Rosenbeck is not liable pursuant to 42 U.S.C. § 1983. The Court asserts no opinion as to whether he was acting under the color of state law.

### C. *City of Farmer City and Chief Larry Woliung*

Plaintiffs allege Larry Woliung, as Chief of Police, was obligated to adequately train and supervise police officers and dispatchers who worked for the City of Farmer City. In addition, Plaintiffs claim the City

of Farmer City developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons in Farmer City. Plaintiffs allege their constitutional rights were violated as a result of Chief Woliung's failure to train or supervise and the City's policies and customs.

■■■■■ "The doctrine of respondeat superior cannot be used to impose § 1983 liability on a supervisor for the conduct of a subordinate violating a plaintiff's constitutional rights." *Gossmeyer v. McDonald,* 128 F.3d 481, 495 (7th Cir.1997). A supervisor will be liable if he, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. *Gossmeyer,* 128 F.3d at 495. Personal involvement is a prerequisite for individual liability in a § 1983 action. *See Wolf Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983) (finding that an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation). "Supervisors who are simply negligent in failing to detect and prevent subordinate misconduct are not personally involved." *Gossmeyer,* 128 F.3d at 495. Rather, "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chicago,* 856 F.2d 985, 992–93 (7th Cir.1988).

■■■■ The theory of respondeat superior is not available against a local governmental entity under § 1983. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Courts have identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy or custom: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *See Baxter by Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 735 (7th Cir.1994).

■■■ However, neither the "City nor the police officers' supervisor can be held liable on a failure to train theory or on a municipal policy theory absent a finding that the individual police officers are liable on the underlying substantive claim." *Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 597 (7th Cir.1997); *see Thompson v. Boggs,* 33 F.3d 847, 859 (7th Cir. 1994); *Abbott v. City of Crocker,* 30 F.3d 994, 998 (8th Cir.1994); *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 724 (4th Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992) (holding a "claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised"); *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (holding that no damages may be awarded against a municipal corporation when a jury has concluded that the officer inflicted no constitutional harm. "If a person has suffered no constitutional injury at the

hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

As the Court has found that no constitutional violation occurred in this case, neither Chief Woliung nor the City of Farmer City may be held liable on failure to train or supervise theories or on a municipal policy theory.

### D. *Conclusion*

Based on the above justification, the Court allows the Motion for Summary Judgment as to Counts I through VI.

## II. *Trespass*

On August 27, 2001, Plaintiffs filed an amended complaint adding Count VII. Count VII alleges Rosenbeck, Williamson, and Borklund illegally entered the Plaintiffs' premises and that such unlawful entry constituted a trespass under Illinois law. Williamson and Borklund argue this claim is barred by the Local Governmental and Governmental Employees Tort Immunity Act:

> No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued. For purposes of this Article, the term "civil action" includes any action, whether based upon the common law or statutes or Constitution of this State.

745 ILL. COMP. STAT. § 10/8–101. The Court agrees. Because Count VII was added almost three years after the events in question, it cannot be maintained against Williamson and Borklund.

■■■ As to Rosenbeck, the Court finds Plaintiffs' claim fails. "A trespasser is one who enters the premises of another for his own purposes without permission, invitation or other right." *Hendle v. Stevens*, 224 Ill.App.3d 1046, 166 Ill.Dec. 868, 586 N.E.2d 826, 832, (2d Dist.1992). Rosenbeck was a family member. Carlene and Darin Carter both testified that Rosenbeck stopped by on his way to and from work, ate meals with the family, and stayed overnight at the Carter residence on several occasions. On the night in question, Rosenbeck stopped by the house to pick up a soda. There was no indication made to Rosenbeck (or the Court) that his presence was unwanted or without permission. Although Defendants seek summary judgment on the trespass claim, Plaintiffs offer *no* response. Without evidence in support of such a claim, the Court will not consider Rosenbeck a trespasser. Therefore, the Motion for Summary Judgment as to Count VII is allowed.

*Ergo*, Defendants' Motion for Summary Judgment is ALLOWED.