Filed 4/8/13  P. v. Zavala CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>ALEJANDRO GONZALEZ ZAVALA,<br><br>　　Defendant and Appellant. | F063418<br><br>(Tulare Super. Ct. No. VCF243691)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Valeriano Saucedo, Judge.

J. Peter Axelrod, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General for Plaintiff and Respondent.

**-ooOoo-**

Alejandro Gonzalez Zavala was convicted of 17 counts of sexually abusing the three minor children of his girlfriend, whom we will refer to as mother.[1]  The jury also found true the allegation that there were multiple victims within the meaning of Penal Code section 667.61, subdivision (b).[2]  He was sentenced to a total indeterminate term of 255 years to life.

He argues the trial court erred in excluding evidence of his lack of criminal record, there was insufficient evidence that four of the counts occurred in California, and he received ineffective assistance of counsel when trial counsel failed to comply with Evidence Code section 782, the Rape Shield Law, which prevented introduction of a prior molestation suffered by one of the victims.  We reject each of these arguments.

One of Zavala's arguments does have merit requiring reversal of the conviction on one count.  Prior to trial, the trial court ruled that the interview of two of the victims, M and B, conducted by the Child Abuse Response Team (the CART interviews) were admissible pursuant to Evidence Code section 1360.  This section permits introduction of a statement made before trial by a victim under the age of 12 describing any act of child abuse *performed on the child*.  Zavala argues he received ineffective assistance of counsel when trial counsel failed to object to a portion of the interview of M that described an act of sodomy committed on B.  We conclude trial counsel was ineffective for failing to object to this portion of the interview, and Zavala was prejudiced by the error because the remaining evidence on this count was insufficient to permit the jury to infer that Zavala sodomized B.  Accordingly, the conviction for violating section 288.7, subdivision (a) (sodomy with a child who is 10 years of age or younger) as alleged in count 17 must be reversed.

---

[1] We do so to protect the identity of the minor children.  For the same reason we will refer to the victims only by their first initial.  No disrespect is intended.

[2] All statutory references are to the Penal Code unless otherwise stated.

## FACTUAL AND PROCEDURAL SUMMARY

### The First Amended Information

The first amended information contained a total of seventeen counts alleging Zavala sexually abused E, M, and B. The charges included violations of section 288, subdivision (a) (lewd and lascivious acts on a child under the age of 14), section 288, subdivision (b)(1) (lewd and lascivious acts on a child under the age of 14 by force), section 288.7, subdivision (a) (sexual intercourse or sodomy with a child 10 years of age or younger), and section 288.7, subdivision (b) (oral copulation with a child 10 years of age or younger).

Specifically, the information included four counts alleging E was the victim of violations of section 288, subdivision (a), seven counts alleging M was the victim of violations of section 288, subdivision (a), two counts alleging M was the victim of violations of section 288.7, subdivision (a), one count alleging M was the victim of a violation of section 288.7, subdivision (b), one count alleging B was the victim of a violation of section 288, subdivision (a), and one count alleging B was the victim of a violation of section 288.7, subdivision (a). Each count alleging that Zavala violated section 288, subdivisions (a) or (b)(1) included a special allegation that there were multiple victims within the meaning of section 667.61, subdivision (b).

### The Testimony

The first victim to testify was E, who was 14 at the time of trial and had just started the eighth grade. At the time of the abuse, she lived with her mother, her two sisters, and a brother. Her mother's boyfriend, Zavala, also lived in the mobile home.

When E was 13, Zavala touched her in a manner that made her uncomfortable. The first time Zavala touched E on her thigh while she was in her room. The touching expanded to other areas. The two were in Zavala's truck the first time Zavala touched E's breasts. While Zavala was driving he reached over to E and put his hand under her shirt and fondled her breast. When the truck stopped, Zavala unbuckled E's pants and

fondled her vaginal area. Zavala told E that she should not tell anyone what had occurred.

On a different occasion Zavala touched E's breasts again. This incident occurred in the room Zavala shared with mother. Zavala touched E's breast over her shirt on that occasion.

Zavala also touched E's genitalia on different occasions. On one occasion the family had gone to a hotel in Porterville. E's sisters, M and B, were also present. The children were watching television while E's mother was in the shower. Zavala was lying on the bed with E when he put his hand down E's pants.

On cross-examination, E remembered an incident where Zavala was teaching her how to drive his truck. E sat on his lap. While E was driving, Zavala put his hands on her vaginal area.

E never discussed these incidents with her sisters.

Zavala was confronted when E told her grandmother about the incidents. He denied the allegations, and E's mother believed Zavala. E then reported the matter to someone at school and the police were called. The investigating officers then asked E to make a phone call to Zavala to discuss the incidents. During the phone call, Zavala told E he would not touch her again.

Tulare County Deputy Sheriff Beatriz Reveles was present during the pretext phone call E made to Zavala. Both Zavala and E spoke in Spanish during the call. Reveles, who is fluent in Spanish, related that E told Zavala she was not going to return home because she did not want him to touch her anymore. Zavala promised he would not touch her again and told her to come home. E stated that Zavala touched her while they were driving to get the car fixed, and Zavala stated it was just that one time, and he would not do it again. When E stated a friend recommended she call the police, Zavala stated again he would not touch her again, and she should come home. Neither E nor Zavala explained what they meant by touching during the conversation.

4.

B was seven at the time of trial and in the second grade. She had a difficult time testifying, but related that Zavala touched her in her vaginal area on more than one occasion. She discussed these incidents with E and M.

M was eight at the time of trial and in the third grade. She also had difficulty testifying, but she related that Zavala touched her on more than one occasion while they were in Colorado. She also testified that Zavala touched her private part while they lived with her grandparents in California on more than one occasion. On each occasion they were in the room Zavala shared with mother when this occurred. Zavala told M to keep the touching a secret.

M also saw Zavala touch B in the car. Zavala, mother, M, and B drove to the store. When mother was in the store, Zavala told B to sit on his lap. M initially stated she could not recall where Zavala touched B. She was able, however, to circle on a picture the part of Zavala's body that touched B. At the time, Zavala had his zipper pulled down. She also identified which part of B's body that Zavala touched by circling the area on a picture, and referred to it as B's bottom. B had her pants off at the time. The same thing happened to M when they were in Colorado. Finally, she related that Zavala had touched her front private area with his private part while they resided in California. Zavala also made M touch his private part with her hand.

Margie Jessen, a forensic nurse, was unable to examine B because she was upset and uncooperative. Jessen was able to examine M. The vaginal exam was unremarkable. Jessen did find a laceration in the perianal area (the skin between the vagina and the anus). The injury was in the process of healing, and appeared to be fairly recent, but it was not possible to determine exactly when the injury occurred. Jessen could not opine on what may have caused the injury.

Zavala testified in his own defense. He denied any wrongdoing, and asserted the allegations must be false because there were always several adults present at the mobile home, and thus someone would have seen him had he abused the children.

### *The Interviews*

In addition to the testimony of the children, the CART interviews of M and B were played for the jury.

M initially denied that Zavala did anything to hurt her. She began her disclosure by admitting Zavala would kiss her on the mouth with his mouth open, and he would put his tongue in her mouth. She then admitted Zavala would touch her vaginal area with his hands and move his hand around. M estimated Zavala had done that to her more than 10 times. M told Zavala to stop, but he wouldn't. He has also touched her vaginal area with his penis "hundreds of times."

When they were in Colorado, Zavala sodomized M. M saw blood on her panties and on toilet paper she used after Zavala did this. Her mother saw the blood on her panties and M told her mother what occurred. Her mother then returned to California.

Zavala also licked M's breasts "a lot," licked her vaginal area about 10 times, and touched her breasts, but only while in Colorado. Zavala also made M orally copulate him. M threw up after that occurred. Zavala made her copulate him about 10 times in California, and 20 times in Colorado.

M also saw Zavala sodomize B.

In her interview, B also related the living arrangements, and stated that Zavala tried to touch her. However, B was unable or unwilling to describe details of what occurred.

### *The Verdict and Sentencing*

The jury found Zavala guilty as charged, and found each special allegation true. The trial court stayed the sentence on two counts pursuant to section 654, and imposed the sentence on each remaining count consecutively for a total indeterminate term of 255 years to life.

## DISCUSSION

### I.  Exclusion of Evidence

During his testimony, defense counsel asked Zavala if he had any prior felony convictions.  The trial court sustained the prosecution's objection.  Zavala argues the trial court's ruling was erroneous because his lack of prior convictions was relevant to prove his good character, and the evidence was not precluded by Evidence Code section 1102.

Evidence Code section 1101, subdivision (a) provides that "evidence of a person's character or a trait of his or her character" is not admissible when offered to prove that person acted in a specific manner on a specified occasion.  This section, however, is subject to certain exceptions.

The exception on which Zavala relies is found in Evidence Code section 1102, which provides that in a criminal action, "evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of his reputation" is admissible if the evidence is offered by the defendant to prove he acted in conformity with this character trait (subd. (a)), or offered by the prosecution to rebut the defendant's evidence (subd. (b)).

Zavala recognizes that by its terms, Evidence Code section 1102 is limited to opinions and evidence of reputation.  Implicitly, he concedes his lack of felony convictions is not opinion evidence or evidence of his reputation.  Nonetheless, he argues this limitation on character evidence was abrogated when the voters passed the "Right to Truth-in-Evidence" provision contained in Proposition 8.  This provision, found in article I, section 28(f)(2) of the California Constitution, states  "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court.  Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay,

7.

or Evidence Code section 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press."

Zavala's argument was rejected in *People v. Felix* (1999) 70 Cal.App.4th 426, 432 (*Felix*). In *Felix*, the prosecution introduced evidence that the defendant had suffered a prior conviction to rebut evidence defendant presented pursuant to Evidence Code section 1102. The prosecution argued that even though the prior conviction was not an opinion or evidence of reputation, this limitation was abrogated by Proposition 8's "Right to Truth-in-Evidence" provision. The appellate court rejected this contention and explained that Evidence Code section 1101, 1102, and 1103 remain "viable and exclude[] relevant character evidence except as specified" therein. (*Felix* at p. 432.)

Zavala unsuccessfully seeks to distinguish *Felix* by asserting the issue in *Felix* was the admission of a prior conviction, while he sought to introduce evidence that he *had not* suffered a prior conviction. The "distinction" provides no relief to appellant. Each situation involves seeking to introduce evidence of prior conduct – either past convictions or absence of past convictions. Neither situation is evidence of reputation or opinion evidence. Accordingly, Zavala is subject to the rule stated in *Felix*, which we agree is the proper resolution of this argument. Therefore, the trial court did not err in excluding the evidence of Zavala's no felony conviction history.

Since there was no error, it is not necessary to address Zavala's contentions that exclusion of the evidence resulted in a denial of his right to due process, or that he suffered reversible prejudice by the ruling. We merely note the exclusion of this evidence could not possibly have deprived Zavala of any constitutional right, nor did the exclusion cause him any discernible prejudice. The jury heard each witness testify, heard Zavala deny the accusations, and rendered a verdict finding him guilty of every charge. Simply hearing that Zavala had not been convicted of a felony in the past would have had little or no effect in the jury's deliberations. After all, simply because one had not

8.

previously been convicted of a felony does not mean or suggest that one has not committed a crime in the past, or is not guilty of the charged crimes.

## II. Ineffective Assistance of Counsel – Admission of Evidence

In count 17, Zavala was convicted of violating section 288.7, subdivision (a), engaging in intercourse or sodomy with a child. The victim in this count was B.

B did not testify to an act of intercourse or sodomy at trial, nor in the CART interview. Nor did either M or E testify to an act of intercourse or sodomy between B and Zavala.

The only evidence to support this count came from M's CART interview, where she told the interviewer that she had observed Zavala sodomize B. The issue is whether M's CART interview was admissible to prove a crime was committed against B. Zavala's attorney did not object to this portion of M's CART interview. Consequently, Zavala frames his argument as one of ineffective assistance of counsel, asserting that the evidence should have been excluded.

A defendant is entitled to a new trial if he received ineffective assistance of counsel at trial. (*People v. Lagunas* (1994) 8 Cal.4th 1030, 1036.) "Establishing a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in the outcome. [Citations.] [¶] Our review is deferential; we make every effort to avoid the distorting effects of hindsight and to evaluate counsel's conduct from counsel's perspective at the time. [Citation.] A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance. [Citation.] … Nevertheless, deference is not abdication; it cannot shield counsel's performance from meaningful scrutiny or

9.

automatically validate challenged acts and omissions. [Citation.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541.)

In this case, the only issue is whether counsel should have objected to this portion of the CART interview. If the objection would have been sustained, then trial counsel was ineffective because M's statement was the only evidence to support this count.

We turn to the question of whether this portion of M's statement should have been excluded had a proper objection been made. Prior to trial, the prosecution made a motion to play the interview relying on Evidence Code section 1360 as authority for the admission of the CART interview. The trial court granted the motion.

Evidence Code section 1360, subdivision (a) states that in a criminal case involving child abuse or neglect, "a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another" is admissible notwithstanding the hearsay rule, subject to certain conditions that are not at issue.

Zavala focuses on the portion of this subdivision that limits out of court statements to an "an act of child abuse … performed with or on the child." (Evid. Code, § 1360, subd. (a).) In M's statement, she was relaying information about child abuse that was performed on B. Because, according to Zavala, Evidence Code section 1360 limits such statements to acts of abuse performed on the child giving the statement, the trial court would have been required to exclude the portion of M's CART interview that described Zavala sodomizing B had a proper objection been made.

The People concede that Evidence Code section 1360 permits only statements by the victim that describe abuse done to the victim. However, the People argue reversal was not required because there was no prejudice and the failure to object was a tactical choice.

The People argue that counsel was not ineffective. The People's argument, reduced to its essence, is that because Zavala defended against the charges by asserting

10.

the children were fabricating the incidents, there was no need to object to the portion of the CART interview wherein M described Zavala sodomizing B. According to the People, this was a valid tactical choice made by trial counsel. We reject this view.

We agree that Zavala's defense was predicated on an assertion the children were fabricating the charges against him. Nonetheless, there can be no justification for acceding to introduction of the only evidence submitted to prove a single count (which carried a sentence of 25 years to life) if that evidence was objectionable. Nor is there any reason to permit evidence that was objectionable simply because there was other evidence that supported the count. There is no rational tactical choice to take such a risk.

The real issue is whether there is other evidence that supported the conviction such that the failure to object did not cause Zavala any prejudice. We have summarized M's testimony on the issue above, but need to now review this testimony in greater detail.

Consistent with her age, M was initially a hesitant witness, not providing any details of what may have occurred. As she testified, the prosecutor was able to elicit additional information from her. Eventually she admitted that she observed Zavala touch B when they were going to the store with her mother. When her mother went into the store, Zavala told B to sit on his lap. M stated she could not remember where Zavala touched B, and she could not remember what happened.

When the prosecutor pressed for more details, M remained hesitant. She testified she could not remember what part of Zavala's body touched B. When asked if Zavala touched B with his hand, M said no. When asked if Zavala touched B with another part of his body, M testified "I think something on his body." When asked what part of Zavala's body touched B, M stated she forgot. She then stated she thought she could circle the part of his body on a picture. Apparently she circled the man's penis in the drawing. M went on to explain that Zavala had his pants on, but unzipped. She then stated, "He unzipped them and he did it to [B]." When asked where Zavala put his penis, M circled a picture of the girl's bottom. M also testified that B took her pants off.

11.

In contrast, in her CART interview, M stated she saw Zavala sodomize B.

We conclude that from this testimony that it is not possible to conclude that Zavala penetrated B, as is required for a sodomy conviction. (§ 286, subd. (a); *People v. Farnam* (2002) 28 Cal.4th 107, 143.) There was no evidence of (1) trauma or bruising to B's anus, (2) semen in B's rectum, or (c) testimony from either B or M that B suffered any pain during or after the incident. (See, generally, *People v. Farnam, supra,* 28 Cal.4th at pp. 143-144; *People v. Adams* (1993) 19 Cal.App.4th 412, 428-429; and *People v. Thomas* (1986) 180 Cal.App.3d 47, 54-56.)

The lack of evidence of penetration in M's testimony at trial compels the conclusion that the jury relied on the statements M made in the CART interview in finding Zavala guilty of sodomizing B as alleged in count 17. Because the jury relied on evidence that would have been excluded had a proper objection been made, we are also compelled to conclude trial counsel's omission was prejudicial, and that Zavala received ineffective assistance of counsel on this count. The conviction on count 17 must be reversed.

### III. Ineffective Assistance of Counsel – Failure to Comply with Evidence Code section 782

The record indicates that E had previously been sexually abused by her stepfather and an uncle while she lived with her family in Utah. It appears the stepfather was prosecuted and convicted for these assaults, while the uncle fled.

Prior to trial, the prosecution moved to exclude any evidence of these assaults. The trial court granted the motion finding, in part, that Zavala failed to comply with the provisions of Evidence Code section 782, the Rape Shield Law, which establishes the procedure a defendant must follow before using the complaining witness's prior sexual conduct to attack his or her credibility. Zavala argues counsel was ineffective because he failed to comply with the requirements of the code section.

12.

This argument must be rejected because it is based on mere speculation. The record reveals only that "there is some evidence that [E] was molested by her stepfather" and an uncle, and the stepfather was incarcerated in Utah. There is no evidence in the record of how E was molested, or to what crime the stepfather had pled or been convicted.

Zavala asks us to conclude the molestation M suffered in Utah influenced her testimony in this trial. We cannot reach this conclusion because the record is incomplete. Without knowing what occurred in Utah, we have no evidentiary basis for comparing the two incidents. Without this evidentiary basis, it is impossible to draw any conclusion about whether the Utah incident influenced M in Zavala's trial.

It has long been a staple of appellate practice that claims of ineffective assistance of counsel are more likely to succeed if raised in a writ of habeas corpus. "[N]ormally a claim of ineffective assistance of counsel is appropriately raised in a petition for writ of habeas corpus [citation], where relevant facts and circumstances not reflected in the record on appeal, such as counsel's reasons for pursuing or not pursuing a particular trial strategy, can be brought to light to inform the two-pronged inquiry of whether counsel's 'representation fell below an objective standard of reasonableness,' and whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]" (*People v. Snow* (2003) 30 Cal.4th 43, 111.) This is a case where information not contained in the record would have to be presented before it is possible to determine if there is any merit to the claim. On this record, there is no merit to the assertion that Zavala received ineffective assistance of counsel relative to Evidence Code section 782.

## IV.    Sufficiency of the Evidence

The testimony and CART interviews established that Zavala, M, B, and mother went to Colorado for approximately a two-week period during which M and B were molested. Zavala argues his conviction on counts 10, 11, 12, and 14 must be reversed

13.

because it was unclear from the testimony whether the acts supporting these convictions occurred in California or in Colorado.

Since "[i]t long has been established that a state will entertain a criminal proceeding only to enforce its own criminal laws, and will not assume authority to enforce the penal laws of other states or the federal government through criminal prosecutions in its state courts" (*People v. Betts* (2005) 34 Cal.4th 1039, 1046), Zavala may not be convicted of crimes that occurred in Colorado. The issue, therefore, is whether there is sufficient evidence in the record to support the jury's conclusion that the challenged crimes were committed in California. In resolving this argument, we must review the trial testimony and the CART interviews.

Our review of the sufficiency of the evidence is deferential. We " 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence – that is, evidence which is reasonable, credible, and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496; *People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681.) We focus on the whole record, not isolated bits of evidence. (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1203.) We presume the existence of every fact the trier of fact reasonably could deduce from the evidence that supports the judgment. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We will not substitute our evaluations of a witness's credibility for that of the trier of fact. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.)

### A. Counts 10 and 11 – Lewd and Lascivious Acts against M

Zavala was convicted of violating section 288, subdivision (a) in counts 10 and 11 by performing lewd and lascivious acts on M. The information described count 10 as Zavala putting his penis to the buttocks of M for the first time, and count 11 as Zavala putting his penis to the buttocks of M for the last time. The issue is whether there is evidence that Zavala committed such an act in California on two occasions.

14.

We conclude there is substantial evidence to support these two counts. While M's testimony in the CART interview seems to limit such acts to the period of time M was in Colorado, during cross-examination by trial counsel she stated that Zavala touched her on the back in the house, and on another occasion Zavala touched her bottom in front of the store causing her pain. Both of these events occurred in California.

It is true that M's testimony was not explicitly detailed, but she was seven when she was molested, and eight when she testified.[3] It is unreasonable to suggest a child of that age could testify with the same clarity as an adult. The fact her testimony related to molestation made testifying even more difficult. (See, e.g., *People v. Johnson* (2002) 28 Cal.4th 240, 242 [section 288.5, continuous sexual abuse of a minor enacted to solve problem of children's testimony which failed to identify with specificity the date or place acts occurred].) However, her references to being touched on her buttocks occurred when she was describing acts of molestation by Zavala, and the jury could reasonably and logically infer the acts were lewd and lascivious within the meaning of section 288, subdivision (a). Accordingly, there was substantial evidence to support the verdict on these two counts.

### B. Count 12

The information alleged in count 12 that Zavala violated section 288, subdivision (b)(1) by forcing M to copulate him. The only testimony related to this incident was in

---

[3] M responded yes to the question of whether Zavala touched her on her front private part while at the house, which referred to the house in Tulare County. Trial counsel then asked her if Zavala touched her on her back at that time, to which M responded yes. When asked if she had her clothes on, M responded she could not remember.

M also described an incident where Zavala put B in his lap while the three of them were in the car, and mother was inside of a store. After B moved, M testified that Zavala told her to get on his lap. M said she had her clothes on. A short while later she repeated that Zavala touched her buttocks while in the car. M responded affirmatively when asked if Zavala ever hurt her buttocks.

the CART interview. In the interview, M described an incident where Zavala "pushed" her "head all the way in his thingy" causing her to throw up. She stated this incident occurred in the room, and it was repeated about 10 times, always in "his room." When asked if it every happened anywhere else, M responded negatively. The next question the interviewer asked was whether such an incident occurred in Colorado, and M stated it had approximately 20 times.

It is clear that at trial and in the CART interview that references to "his room" referred to the bedroom Zavala shared with mother in the house in Tulare County. This location is confirmed by the fact that in addition to the 10 times Zavala forced her to copulate him in his bedroom, he also forced her to do so 20 times in Colorado. The only logical and rational interpretation of this testimony was that Zavala forced M to orally copulate him numerous times in both Tulare County and in Colorado. Accordingly, there was substantial evidence to support the conviction of this count.

### C. Count 14

The information alleged that Zavala violated section 288.7, subdivision (a) by engaging in an act of intercourse or sodomy with M while he was over 18, and M was 10 years of age or younger. The only evidence in the record to support this count is found in the CART interview.

M provided detailed information about acts of sodomy performed by Zavala on her while they were in Colorado. Initially, she denied that Zavala did so in California. However, she consistently stated that the only individuals that went to Colorado were Zavala, mother, M, and M's brother. B did not go to Colorado.

Later in the interview, M was asked if Zavala sodomized anyone else. M related that Zavala had done the same thing to B. When asked how she knew Zavala did that, M stated that she was in the car with B and Zavala waiting while her mother went shopping. While in the car waiting, M saw Zavala sodomize B. The interviewer asked if Zavala had

also done that to her in the car, M replied yes, and stated that it hurt her.  M then explained that Zavala put his " 'thingy' in the hole where you poop."

Since B was not in Colorado, then the only logical interpretation of this evidence is that this incident occurred in California.  Accordingly, there is substantial evidence to support this count.

## DISPOSITION

The conviction for violating section 288.7, subdivision (a) as alleged in count 17 is reversed.  In all other respects, the judgment is affirmed.  The matter is remanded to the trial court to amend the abstract of judgment accordingly, and to transmit certified copies of the amended abstract to all appropriate parties and entities.

_____
Poochigian, J.

WE CONCUR:


_____
Kane, Acting P.J.


_____
Franson, J.

17.